CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. COUNTY OF LINCOLN.

FILED NOVEMBER 6, 1902.   No. 12,165.

Commissioner's opinion, Department No. 2.

1. **Levy: LIMITATION: BRIDGE TAX.** Where a county board has levied the full amount of tax allowed by law for a county general fund, and also designedly levies a larger amount of bridge tax than is necessary for use in that fund, and immediately transfers a large part thereof to said general fund, the tax so unnecessarily levied and transferred, is levied for an illegal and unauthorized purpose, and is void.

2. **Payment Under Protest: ACTION AT LAW.** Such tax, having been paid under protest, may be recovered back in an action at law.

3. **Petition: DEMURRER.** Petition examined, and *held* sufficient to resist a general demurrer.

ERROR from the district court for Lincoln county. Tried below before GRIMES, J. *Reversed.*

*J. W. Deweese* and *Frank E. Bishop,* for plaintiff in error.

*J. G. Beeler, County Attorney, contra.*

BARNES, C.

The plaintiff commenced this action in the district court for Lincoln county to recover of the defendant certain illegal taxes which it had theretofore paid defendant under protest. The petition contained two causes of action. A general demurrer was filed to the second cause of action,

and was sustained. The plaintiff duly excepted thereto, elected to stand upon its petition, refused to further plead, and thereupon the court rendered a judgment of dismissal as to said second cause of action, with costs, and the plaintiff prosecuted error to this court. It is contended by the plaintiff that the tax so paid under protest, and set forth and described in its petition, was levied and assessed for an illegal and unauthorized purpose; that it had taken the proper steps to recover the same from the defendant; and that the court erred in sustaining the general demurrer to its petition and in dismissing its second cause of action.

1. Was the tax in question levied for an illegal and unauthorized purpose? For the second cause of action it was alleged in the petition that for the year 1897 the defendant county levied a tax of nine mills for general fund purposes, and two mills for a bridge fund, on the property of the plaintiff, which bridge-fund tax amounted to the sum of $312.14. It was further alleged that said levy of two mills for bridge purposes was unauthorized by law; that it was far in excess of the amount necessary, or likely to be needed for the maintenance of the bridges of the said county, and for any purpose for which said tax might be levied; that at the time of making said levy and collecting said taxes the bridge fund of the county should have been well supplied, and there should have been on hand in said fund large sums of money, such as would not require any levy for said year for that fund; and said levy was made for said fund when, if the funds properly belonging thereto had been maintained and preserved therein, no levy for bridge purposes would have been necessary for that year; and that said tax was levied fraudulently, unnecessarily and unlawfully, in order that said bridge fund might be unduly and excessively enlarged, and increased, for the sole purpose of transferring the surplus arising therefrom to the general fund of said county, and thereby to increase the said general fund above the legal limit, and above the amount that could be produced in said fund by taxation at

the legal rate of nine mills on the dollar valuation. It was also alleged that the said levy of two mills for bridge purposes for the year 1897 was one of a series of excessive and illegal levies for said fund which had been made above the amount necessary for each of the said years, in order that a large excess might be on hand to be turned over to the general fund; that for each of the years, in the series, nine mills had been levied for the general fund; that for the year 1894, $11,000 was levied for the so-called bridge fund, of which $7,000 was transferred into the general fund; that for the year 1895, $11,000 was levied for the so-called bridge fund, of which $4,000 was transferred to the general fund; that for the year 1896, $12,000 was levied for the so-called bridge fund, and $3,250 thereof was transferred to the general fund; that for the year 1897, $10,000 was levied for the so-called bridge fund; and that on February 27, 1897, after the estimate therefor had been made, and even before the said tax had been levied, $1,850 of the said proposed fund was, by an order of the board of commissioners, transferred from the said proposed bridge fund to the general fund of said county for the said year; that said taxes were excessive and above the amount necessary to meet the ordinary or probable expense chargeable against the bridge fund; that the levy and collection of the fund so greatly in excess of the amount needed for the reasonable expense of the bridge fund, and the transfer of the same to the general fund of the said county, for which there had already been made in each of the said years a levy of nine mills on the dollar valuation, was made for the purpose of evading the legal limit of nine mills on the dollar valuation for the general fund, and of collecting from the taxpayers of said county, and the plaintiff herein, a sum larger than by law was permitted for each of the said years, and especially for the year 1897, and was a fraud upon the plaintiff and the other taxpayers of the said county; that if the amounts levied for said bridge fund had been preserved, and kept in such fund, no taxes for said fund would have been necessary for the year 1897,

and that the levy for the excessive amount, and the transfer thereof unlawfully to the said general fund, rendered said tax of $312.14 for said bridge fund, upon the property of the plaintiff, excessive, illegal, null and void. It was further alleged in the petition that the plaintiff had paid the said illegal taxes under protest, and a copy of the protest was duly attached to the petition, and made a part thereof by exhibit. It was further alleged that a demand for the repayment of the said taxes so levied for an illegal and unauthorized purpose, and so paid under protest, had been made within the time provided by law, of and from the treasurer of the said defendant county, which demand for repayment was refused; and a copy of the said demand was also attached to the petition and made a part thereof as an exhibit thereto. The plaintiff prayed for a judgment against the defendant for the amount of the taxes so levied for such illegal and unauthorized purpose, and so paid under protest, to wit, the sum of $312.14, together with interest thereon from the date of payment at the rate of seven per cent. per annum.

In the case of *Chicago, B. & Q. R. Co. v. Nemaha County*, 50 Nebr., 393, it was held that the taxes levied by a county in excess of the maximum rate fixed by the constitution were levied for an illegal and unauthorized purpose, within the meaning of section 144 of article 1, chapter. 77 of the Compiled Statutes. See, also, *Chase County v. Chicago, B. & Q. R. Co.*, 58 Nebr., 274.

In the case of *Union P. R. Co. v. Dawson County*, 12 Nebr., 254, 257, the court said: "The limitation upon the rate of taxation is for the protection of taxpayers, and to secure economy in the expenditure of public moneys. It is the evident intention of the law that only the amount required in any particular fund in one year shall be levied, and no more. If the law limits the levy for the ordinary county revenue to ten mills on the dollar valuation, no greater sum can be raised for that purpose by levying more than is required for a sinking fund, or any other tax, and then transferring the surplus to the general fund. If

the law could thus be evaded it would afford no protection to the taxpayers whatever." Speaking further of the transfer of a portion of the sinking fund to the general fund, in the same case, the court said: "The act of 1877[*] merely authorizes the transfer of such portion of the sinking fund as is 'no longer required for the purposes for which the same was levied.' When will such funds be no longer required for the purposes for which they are levied? Evidently when the debt is paid in full, and not before. That is, if a surplus remains in the treasury after the debt is paid in full, it may be transferred to the general fund. But until such time the sinking fund tax must all be applied to the purposes for which it was raised, and a taxpayer may compel its application to that purpose."

In the case of *Grand Island & W. C. R. Co. v. Dawes County,* 62 Nebr., 44, the court held that "when county commissioners have made a levy of nine mills for general fund purposes, they have no further power to levy an additional tax for payment of outstanding warrants previously issued against the general fund in excess of the statutory limit, unless authorized by a vote of the people." It was further said: "It will be noted that by the terms of the statute[†] above quoted, the county authorities are limited to a levy of nine mills for general fund purposes. This being the basis of their power to act, they must, in the exercise of it, keep within the limit granted, both as affects the amount of the levy and the purpose specified. The restriction of a levy of nine mills for general fund purposes, is manifestly for the purpose of compelling the commissioners to administer the affairs of the county with economy and to prevent the municipal subdivisions of the state from becoming burdened with debts to be paid by taxpayers. * * * If the commissioners had made a levy of twelve mills for the general fund for the year 1896, we think all would concede that the levy would be void to the extent of the excess of the amount authorized by the law

* Session Laws, 1877, page 214.
† Compiled Statutes, ch. 77, art. 1, sec. 77.

for that purpose; and yet that is the effect of the levy of nine mills for general fund purposes, and three mills for old outstanding warrants in the case under consideration. If such a transaction were permitted to stand, it would be to accomplish by indirection that which the law prohibits to be done directly."

In the case of *Union P. R. Co. v. Cheyenne County,* 64 Nebr., 777, 779, the court uses the following language: "From a careful examination of the statute we are constrained to say that the action of the board of county commissioners in transferring the unexpended balance remaining in the bridge fund to the general fund was unauthorized and illegal. The statute providing for the transfer of an unexpended balance remaining in a fund to the county general fund, probably has no application to balances remaining in funds for which, under the statute, a levy is required each year. There is no county in the state which is not required to make expenditures for the erection and repair of bridges each year, and under the statute a levy is required to be made for such purpose within the limit of four mills for whatever amount is necessary to meet the expenditures for such year. To permit the county to make a levy for the bridge fund in excess of the amount required for the year in which the levy is made, with the purpose in view of transferring the balance to the general fund, would be to permit it, by indirection, to accomplish what, by statute, it is prohibited from doing directly."

Section 77 of the revenue law provides that the county board shall levy the necessary taxes for the current year. Thus the law which gives the board power to tax, limits such power to the actual necessities of the county therefor. It must be conceded that the county authorities would be unable to levy a tax which would produce the exact amount of revenue necessary to meet the needs of any particular fund, on account of the uncertainty of collections, but they can determine such amount to a reasonable certainty. In making estimates and in levying taxes they should be given

reasonable latitude, but when, as in this case, it is alleged that the board made an estimate of a large amount of tax for a bridge fund, and before such tax was even levied, transferred a large part of it to the general fund, for which the full amount of tax authorized by law had been estimated, and was proposed to be levied, it can scarcely be contended that the proposed bridge-fund tax was necessary, or that it was not levied for an illegal and unauthorized purpose. It will be observed that it is alleged in the petition, in the case at bar, that the defendant, through its proper officers, levied the tax in question under the name of a "bridge fund"; that no such levy was necessary; that the levy was made fraudulently and for the illegal purpose of transferring the proposed tax to the general fund, and to thus increase the amount of said fund beyond what could be realized by a levy of nine mills, which is the legal limit therefor. The demurrer to the petition admits these facts. Hence we say that the tax was levied for an illegal and unauthorized purpose, and was illegal and void.

2. Can such a tax, having been paid under protest and its repayment demanded from the treasurer according to the provisions of section 144, article 1, chapter 77 of the Compiled Statutes, be recovered in an action at law? This court has held in the case of *Chicago, B. & Q. R. Co. v. Nemaha County, supra,* that a suit at law may be maintained to recover such taxes. This case was followed and approved in the case of *Chase County v. Chicago, B. & Q. R. Co., supra.* Again, in the case of *Dakota County v. Chicago. St. P., M. & O. R. Co.,* 63 Nebr., 405, this court held that taxes levied in excess of the constitutional limit are for an illegal and unauthorized purpose, and are void; that one paying taxes in excess of such constitutional limit may recover such excess in an action at law, although such taxes were not paid under protest. It is true that it was held in *Union P. R. Co. v. Cheyenne County,* 64 Nebr., 777, under the facts existing in that case, that an injunction would not lie to restrain the collection of the tax complained of; and it is possible that the district court sus-

tained the demurrer in this case because of something found in that opinion. There is nothing, however, in that case which is in conflict with the rule, firmly established in this state, that where taxes are levied for an illegal and unauthorized purpose, and are paid under protest they may be recovered back in an action at law. In fact we know of no case where this court has held that such an action could not be maintained. The taxes described in the plaintiff's petition being illegal and void, and levied for an unauthorized purpose, it follows that the same may be recovered in an action at law. It appears from the petition that the plaintiff took all the proper and necessary steps to recover back the tax in question from the defendant at the time and after it was paid.

All these facts being admitted by the demurrer, we are constrained to hold that the petition states a cause of action, and the demurrer should have been overruled. It follows that the court erred in sustaining the defendant's demurrer to the plaintiff's petition, and in dismissing the second cause of action.

We therefore recommend that the judgment of the district court be reversed, and the cause remanded for further proceedings.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.