LOUP RIVER PUBLIC POWER DISTRICT, APPELLANT, V.
COUNTY OF PLATTE, APPELLEE.

14 N. W. 2d 210

FILED APRIL 21, 1944.   No. 31640.

*August Wagner,* for appellant.

*Jesse L. Dougherty, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL and WENKE, JJ., and TEWELL, District Judge.

SIMMONS, C. J.

Special assessments were levied against plaintiff's property for benefits on account of the construction of a drainage ditch. Plaintiff paid the assessments and after notice and demand for a refund brought this action at law to recover the same. The defendant demurred. The trial court sustained the demurrer, and dismissed the action. Plaintiff appeals. We reverse the judgment of the trial court.

Plaintiff's petition contained substantially the following allegations:

The plaintiff is a corporation organized under Senate File 310, Laws 1933 (now sections 70-701 to 70-715, Comp. St. Supp. 1941), is the owner of canals, powerhouses and transmission lines principally located in Nance and Platte counties, and is engaged in the generation of electrical energy.

The county constructed a drainage ditch, and pursuant to article 1, ch. 31, Comp. St. 1929, created a drainage district for the purpose of assessing benefits to property benefited by said ditch, and on June 15, 1936, assessed the plaintiff's right of way and canal within the district in the sum of $5,630.48.

Prior to the creation of the drainage district, plaintiff at a cost in excess of $4,000, had constructed its canal and a good and sufficient drainage ditch to intercept flood waters and drain lands above and north of its canal, emptying such drainage waters into a watercourse on its own land, and from there into the Loup river. Defendant's ditch drained lands to the south of the plaintiff's canal. Defendant included plaintiff's ditch in its drainage scheme, and built its

ditch at a cost of $7,000 less than would have been necessary had it not included the plaintiff's construction in its works. Defendant did not allow the plaintiff for any part of the value of its ditch in making the assessment against the plaintiff's property. The defendant's ditch, when completed, did not protect the plaintiff's property; plaintiff notified the defendant that it had received no benefits, and that it was necessary that defendant's ditch be straightened and widened. Defendant took no action.

Thereafter, the plaintiff, being threatened with litigation and resulting liability for damages due to flood waters overflowing on lands below plaintiff's canal, and in order to protect itself, purchased land, straightened and widened the ditches and natural watercourse, and in doing so expended in excess of $7,000. The amount so expended equaled half the cost of defendant's ditch, including the part constructed by plaintiff and adapted by the defendant in its drainage scheme. Defendant in apportioning benefits assessed some properties at less than one per cent of actual benefits received, and canceled an assessment against a railroad company in consideration of the construction of a bridge over a ditch, which bridge the company was obligated to construct at its own expense. Plaintiff received no benefits whatsoever from the construction work done by defendant. The assessment was made in violation of section 21, art. I of our Constitution, and articles V and XIV of the Amendments of the Constitution of the United States, was in excess of any benefits, amounted to a confiscation of property, was without due process, was inequitable, unjust, disproportionate and illegal.

April 20, 1942, the plaintiff paid the assessment, together with interest, under protest, took a receipt therefor as evidence of said payment, and on April 21, 1942, made demand in writing upon the defendant and its county treasurer for refund, and gave notice that if not repaid within 90 days, suit would be filed. The county treasurer acknowledged receipt of the demand and notice the same day. Plaintiff prayed for judgment against the county for the amount so paid with interest.

We do not find in the petition a direct allegation that the county had not refunded the taxes so paid. However, the defendant here treats the petition as alleging that fact, and we will so consider it.

Defendant demurred to this petition on the grounds: First, that it did not allege facts sufficient to constitute a cause of action; and, second, that the allegations constituted an admission on the part of the plaintiff that it had no cause of action.

The trial court sustained the demurrer. Plaintiff waived its right to plead further and elected to stand on its petition. The trial court then dismissed the action at plaintiff's costs.

The plaintiff contends that this action is authorized by section 77-1923, Comp. St. 1929. The defendant, to sustain the trial court, argues that the petition does not state a cause of action under section 77-1923, *supra,* in that there is no allegation of facts, which, if true, would make the tax levied and assessed an illegal, unauthorized or invalid tax, and argues that plaintiff's only remedy is by petition in error. The defendant further submits that the assessment was made on June 15, 1936, and this action, being brought on August 8, 1942, is barred by the statute of limitations. These contentions present the issues for determination here.

This controversy has been twice before this court. In *Loup River Public Power District v. Platte County,* 135 Neb. 21, 280 N. W. 430, the question presented was as to the "legal method of procedure from the county board to the district court by one dissatisfied with the assessment of benefits * * * in the establishment of a drainage district." Plaintiff sought to "appeal." This court held: "A proceeding in error is the proper remedy under our statutes, and it must be taken within the time provided by statute." Thereafter, in *Loup River Public Power District v. Platte County,* 141 Neb. 29, 2 N. W. 2d 609, plaintiff sought to enjoin the collection of these taxes. The trial court held that the district was benefited only in the amount of $3,400. On appeal and cross-appeal, this court held that it could not cor-

rect the assessment by injunction, and the order reducing the assessment was set aside. Thereafter this action was brought.

Section 77-1923, *supra*, is in part as follows: "No injunction shall be granted by any court or judge in this state to restrain the collection of any tax, or any part thereof hereinafter levied, nor to restrain the sale of any property for the non-payment of any such tax, except such tax or the part thereof enjoined be levied or assessed for any illegal or unauthorized purpose; nor shall any person be permitted to recover by replevin, or other process, any property taken or restrained by the county treasurer for the non-payment of any tax, except such tax be levied or assessed for illegal or unauthorized purpose; but in every case the person or persons claiming any tax, or any part thereof, to be for any reason invalid, who shall pay the same to the county treasurer, may proceed in the following manner, viz.: First. * * * Second. If such person claim the tax or any part thereof to be invalid for the reason that it was levied or assessed for an illegal or unauthorized purpose, or for any other reason except as hereinbefore set forth, when he shall have paid the same to the treasurer, or other proper authority, in all respects as though the same was legal and valid, he may, at any time within thirty days after such payment, demand the same in writing from the treasurer of the state, or the county, city, village, township, district or other subdivision, for the benefit, or under the authority, or by the request of which the same was levied, and if the same shall not be refunded within ninety days thereafter, may sue such county, city, village, township, district or other subdivision for the amount so demanded; and if upon the trial it shall be determined that such tax, or any part thereof, was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid, judgment shall be rendered therefor with interest and the same shall be collected as in other cases."

This section of the statute was before the court in the recent case of *Hayman v. City of Grand Island,* 135 Neb. 873,

284 N. W. 733. In that action an assessment was made for improvements; the taxes were paid under protest; and an action at law brought to recover on the ground that they were unauthorized, invalid, illegal and confiscatory. It was there contended, among other things, that plaintiff should have appealed by error from the assessment of benefits made by the city council, and that an original action could not be maintained to recover the tax. We there affirmed a previous holding of this court that "The only foundation for a local assessment lies in the special benefits conferred upon the property assessed, by the improvement to pay which the assessment is made, and *an assessment beyond the benefit so conferred is a taking of property for public use without compensation, and therefore illegal.*" (Emphasis supplied.) It may be here pointed out that this rule was announced ten years before the legislature reenacted section 77-1923 in its present form. Consistent with our former decisions we there held: "Section 77-1923, Comp. St. 1929, authorizes the bringing of an original action to recover taxes paid, where the taxpayer claims that the tax was levied or assessed for an illegal or unauthorized purpose."

The trial court from its memorandum opinion in this case, as set out in the briefs, seems to have been of the opinion that the *Hayman* case is not controlling here. This is based upon the analysis of that decision which is made in the opinion in 141 Neb. 29, 2 N. W. 2d 609. We there said that two sections of the statute were involved in the *Hayman* case, to wit: Section 16-628, Comp. St. 1929, and section 77-1923, Comp. St. 1929. Section 16-628 was referred to in the *Hayman* opinion, but in connection with the discussion of the case of *Cain v. City of Omaha,* 42 Neb. 120, 60 N. W. 368, in which the holding was made, herein quoted, that "an assessment beyond the benefit so conferred is a taking of property for public use without compensation, and therefore illegal." The decision rested upon the proper application of section 77-1923. The defendant so construed the *Hayman* decision in the case decided in 141 Neb. 29, 2 N. W. 2d 609, for there in discussing the *Hayman* case in its

brief, defendant said: " * * * the plaintiff paid into the proper authority the amount of the tax and brought an action under Sec. 77-1923, C. S. Nebraska, 1929, claiming that the tax exceeded the benefits. The contention was made by the City that such special assessments could not be collaterally attacked, and that the only proceeding was one by writ of error. The court overruled this contention on the basis that if the assessment exceeded the actual benefits, that part of the assessment over and above the benefits was illegal and therefore subject to recovery in a suit brought under this section of the statute; * * * ."

It was also said in the case in 141 Neb. 29, 2 N. W. 2d 609: "The *Hayman* case * * * is entirely different from the one we have before us." The statement is correct. It refers, however, not to a different statutory basis, but to the fact that the *Hayman* case was a law action based upon a statutory right of recovery; whereas, the latter case was one in equity for injunctive relief. This distinction was recognized by the defendant in its brief in the latter case, wherein it said: "Without conceding that the doctrine as laid down in the *Hayman* case, *supra*, is sound, if it is to be construed as a holding that special assessments of this nature can be collaterally attacked, it in itself defeats the proceeding in this case based on the fundamental legal theory that an injunction will not be granted in a case where there is a choice between the ordinary processes of law and the extraordinary remedy by injunction and the remedies at law are sufficient to furnish the injured party full relief to which he is entitled in the circumstances."

It was further said in the latter case that "this court is powerless *in this proceeding* to correct the excessive assessment *by an injunction proceeding* when the statute clearly requires that such errors of the county board be corrected by a petition in error." (Emphasis supplied.) Such was the holding in the first appearance of this controversy in the case decided in 135 Neb. 21, 280 N. W. 430.

The remedy by petition in error is not exclusive and the case in 141 Neb. 29, 2 N. W. 2d 609, does not so hold. The

remedy by petition in error is of doubtful value, in *fact* matters, in view of the rule announced in *Dodge County v. Acom,* 72 Neb. 71, 100 N. W. 136: "On a petition in error from the judgment of the county board in such a proceeding, its findings and orders are entitled to the same weight as the verdict of a jury, or the findings and judgment of a court, and will not be reversed or set aside unless it appears that the evidence is insufficient to sustain them and they are clearly wrong."

Section 77-1923 was adopted by the legislature for the purpose of providing an action at law for the recovery of money paid for taxes that have been levied or assessed for an illegal or unauthorized purpose, or were for any reason invalid. This was recognized in the early cases of *Chicago, B. & Q. R. Co. v. Nemaha County,* 50 Neb. 393, 69 N. W. 958, and *Chase County v. Chicago, B. & Q. R. Co.,* 58 Neb. 274, 78 N. W. 502. The rule that "where taxes are levied for an illegal and unauthorized purpose * * * they may be recovered back in an action at law" was recognized as "firmly established" in *Chicago, B. & Q. R. Co. v. Lincoln County,* 66 Neb. 228, 92 N. W. 208. See, also, *Darr v. Dawson County,* 93 Neb. 93, 139 N. W. 852. The right to maintain such an action under section 77-1923 was recognized, without citation of authority, in *Monteith v. Alpha High School District,* 125 Neb. 665, 251 N. W. 661, a decision repeatedly followed by this court. The legislature by this act gave to the taxpayer the right to maintain an action at law to recover such a "tax, or any part thereof," and made it the duty of the courts to determine whether "such tax, or any part thereof," was illegal, unauthorized or invalid, and to render judgment for the taxpayer for the amount so determined.

Plaintiff proceeded properly in filing an original action at law for the recovery of these taxes, and the trial court erred in sustaining the demurrer to the petition on the ground here considered.

This leaves for consideration the proposition presented by defendant that the action is barred by the statute of limitations (Comp. St. 1929, sec. 20-212). That statute is:

"An action for relief not hereinbefore provided for can only be brought within four years after the cause of action shall have accrued." The question then is, when did plaintiff's cause of action accrue?

Defendant submits that the assessment against the property was levied on June 15, 1936, and that on that date, or at least at the time of the expiration of the date for appeal by petition in error, which defendant fixes as September 15, 1936, plaintiff could have taken the necessary steps to lay the foundation for this action and that, accordingly, its cause of action accrued at that time.

The statute, section 77-1923, fixes no time within which the payment must be made. It does provide, however: " * * * when he shall have paid the same * * * he may, at any time within thirty days after such payment, demand the same in writing * * * , and if the same shall not be refunded within ninety days thereafter, may sue such county * * * ."

The basic question here presented was decided by this court in *Monteith v. Alpha High School District, supra.* There the taxpayer failed to make the demand in writing within 30 days after the payment of the taxes, the demand being made some three years after the payment. We there held that "The statute of limitations commences to run upon the payment of the taxes" (that being the time when the 30-day period began to run), and because the plaintiff failed to demand repayment within the 30-day period, his action was barred. See a discussion of this case in *McDonald v. Lincoln County,* 141 Neb. 741, 4 N. W. 2d 903. Plaintiff here, however, made the demand in writing within the 30-day period. Thereafter, the county had, under the statute, a period of 90 days after the demand in which to make the refund. Clearly that 90-day period must necessarily expire before the plaintiff "may sue;" otherwise, the county would be denied the time given by statute in which to determine its course and to refund the money so paid, if that be its decision. Under these facts, the statute limiting the time when the action can be brought commences to run upon the

expiration of said 90-day period. If we were to follow defendant's reasoning in this case, it would be in effect to hold that plaintiff's cause of action to recover the taxes so paid was barred before the payment was made. The statute is not a bar to this action.

The trial court erred in sustaining defendant's demurrer to plaintiff's petition and in dismissing the same. Its judgment is accordingly reversed and the cause remanded for further proceedings.

REVERSED.

TEWELL, District Judge, dissenting.

I cannot agree to the majority opinion in this case. Its potential effects are so far reaching that I deem it my duty to state briefly a few of the reasons why I disagree with it.

The drainage district involved was constructed under the provisions of chapter 31, art. 1, Comp. St. 1929. I shall not here attempt to outline the provisions of that article. Suffice it to say that in this action no attack is made upon the constitutionality of such article, or any part of it, and that no attempt is made to allege or show that the proceedings by which the drainage ditch was established, and the special assessments levied, were other than in conformity to the provisions of such article, other than to allege that the special assessments were greater than the benefits. It should further be noted that a section of said article 1, namely, 31-124, provides as follows:

"The collections of assessments to be levied to pay for the location or construction of any ditch shall not be enjoined nor declared void; nor shall such assessment be set aside in consequence of any error or irregularity committed or appearing in any of the proceedings provided by this article, and no injunction shall be allowed restraining the collection of any assessment until the party complaining shall first pay to the county treasurer the amount of his assessment, which amount so paid may be recovered from the county in an action brought for that purpose in case such injunction is made perpetual."

As one basis for my dissent, I submit that the questions

involved in determining whether or not a stated local improvement should be allowed, and, if so, in determining what should be the proceedings to establish it and to levy special assessments thereby, in order to pay the cost thereof, on the property benefited, are questions peculiarly and solely legislative in nature. By said article 1 the legislature placed the power of the determination of the extent of the benefits accruing to a parcel of land from the authorized local improvement in the county board. A review by the courts upon error proceedings of the action of such board is provided by statute. No such proceedings for review having been taken within the time provided by law, the action of such board has become final, and, in the absence of fraud or demonstrable mistake, is not subject to collateral attack. See Special or Local Assessments, 48 Am. Jur. secs. 12, 13, 29 and 185; *Kansas City S. Ry. Co. v. Road Improvement District,* 266 U. S. 379, 45 S. Ct. 136; *Milheim v. Moffat Tunnel Improvement District,* 262 U. S. 710, 43 S. Ct. 694; *Dodge County v. Acom,* 61 Neb. 376, 85 N. W. 292; *Tyson v. Washington County,* 78 Neb. 211, 110 N. W. 634; *Johannes v. Thayer County,* 83 Neb. 689, 120 N. W. 176; *Drainage District No. 1 v. Village of Hershey,* 139 Neb. 205, 296 N. W. 879. In the case last above cited, the streets and alleys were subject to assessment in some amount, but the court could not and did not determine such amount. Under the majority opinion, when this case is tried to a jury, the only questions submissible to the jury are that of whether or not the special assessments exceeded the benefits and, if so, by how much? The jury thereby take the place of the nonjudicial administrative body provided by the legislature.

A second basis for this dissent, which may be said to be a necessary corollary of the first above mentioned, is that section 77-1923, upon which the majority opinion is based, was never intended to apply, in any manner, to special assessments based upon benefits for local improvements, as distinguished from taxes levied without regard to benefits. To so apply it is to allow a jury in a judicial and collateral proceeding to perform the function of the administrative

body in which the legislature placed the power of the determination of the extent of benefits. In the case of *Hayman v. City of Grand Island,* 135 Neb. 873, 284 N. W. 733, cited in the majority opinion, and, for convenience, hereinafter called the *Hayman* case, the jury in a judicial and collateral proceeding determined that the benefits were only about half as much as the administrative body had determined. Is the judgment rendered upon their verdict a final determination of the extent of benefits, or is it any more apt to be equitable and just than was the action of the administrative body? Many statutes that provide for local improvements and special assessments provide for a supplemental assessment, as does article 1 above mentioned (see sec. 31-122). Others provide for a reassessment in case all *or any portion* of an assessment is declared invalid, an example being section 31-429, Comp. St. 1929.

To apply said section 77-1923 to special assessments for local improvements, as distinguished from the common-law remedy, is completely incompatible with the entire theory and the entire practicability of local assessment statutes. Such statutes are very necessary to progress, and are in accord with the growth of local self-government. It is common knowledge that there are in existence today in Nebraska hundreds of local improvement districts in which special assessments have been levied. Many times these special assessments are not paid for years after the local improvement is completed. Such was true in the case at bar. The majority opinion will allow their payment and recovery, either in whole or in part, under the provisions of said section 77-1923. If such a condition exists in our law, it is high time for the legislature to amend section 77-1923 in such manner as to cause it not to apply to special assessments for local improvements based upon benefits, as distinguished from a tax that is levied without regard to benefits.

I agree that special assessments based upon benefits cannot exceed the benefits, but contend that the authority to determine the extent of such benefits is solely in the legisla-

ture, or in such administrative body or bodies as the legislature may create or provide for, and to which it may delegate such authority. Under certain conditions, courts in a collateral proceeding may enjoin all, or parts of, special assessments, but in so doing should not determine the extent of the benefits. *Road Improvement District v. Missouri P. Ry. Co.*, 274 U. S. 188, 47 S. Ct. 563. There does exist a common-law right of action to recover special assessments after involuntary payment, or when paid and the improvement never constructed. Such an action, however, is subject to the defenses of waiver and estoppel, such as failure to object until the improvement was completed, joining in the petition for the improvement, etc. *Geib v. County of Morrison*, 119 Minn. 261, 138 N. W. 24, 9 A. L. R. 839. See, also, Annotation 9 A. L. R. 842. Such an action is a very different proceeding than is a proceeding under section 77-1923.

As a third basis of this dissent, I submit that section 31-124 above quoted is an absolute bar to the maintenance of this action, even though section 77-1923 be held to include special assessments based on benefits. In the case of *Morris v. Merrell*, 44 Neb. 423, 62 N. W. 865, this court held that such section did not prevent an injunction where the proceedings thereunder were such as to render the assessments entirely void. In *Loup River Public Power District v. Platte County*, 141 Neb. 29, 2 N. W. 2d 609, a case involving the same parties and the same assessments as does this case, this court declared "the assessment is not void, neither is it illegal, but it is claimed to be excessive; * * * ." The legislature, without question, had the power to provide the restrictions contained within said section 31-124, so long as there existed no such procedural defect, fraud, or demonstrable mistake, as to render the assessments entirely void. The case last above cited held that no such procedural defect, fraud, or demonstrable mistake existed in the assessments involved. Under such condition, the injunction having been denied, said section 31-124 is a bar to this action.

In the *Hayman* case great reliance seems to have been

placed upon the opinion in *Cain v. City of Omaha,* 42 Neb. 120, 60 N. W. 368. That case was not based upon section 77-1923, but rather upon a section of the same statute under which the special assessments there involved were levied, such section being now section 16-628, Comp. St. 1929. Such section is a part of the method by which the legislature had declared the extent of the benefits should be determined. To my mind, the holding in the *Hayman* case is not in accord with any prior holding of this court. In *City of Omaha v. Hodgskins,* 70 Neb. 229, 97 N. W. 346 (based upon a statute preceding section 77-1923 in date), and in *Dorland v. City of Humboldt,* 129 Neb. 477, 262 N. W. 22, this court, impliedly at least, held section 77-1923 applicable to actions to recover special assessments. Certainly no logical reason for such a holding was given.

I submit that the holding in the *Hayman* case should be overruled, and section 77-1923 held not applicable in an action to recover special assessments based only upon benefits for local improvements. The judgment of the trial court in this action should be affirmed.