CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
v. NEMAHA COUNTY.

FILED JANUARY 19, 1897.   No. 6934.

1. **Taxation**: COUNTIES: EXCESSIVE LEVY. Under the constitution a
county board has no authority to levy taxes which in the aggre-
gate exceed $1.50 per $100 valuation, unless authorized so to do by
the vote of the electors of the county, except for the payment of
indebtedness existing at the date of the adoption of the consti-
tution.

2. ——: ——: ——. When taxes levied by the county exceed the
maximum rate fixed by the constitution, such portion of such
taxes as is above the constitutional limit was levied for an "illegal
and unauthorized purpose" within the meaning of section 144 of
article 1, chapter 77, of the Compiled Statutes.

3. ——: ——: RECOVERY OF TAXES PAID UNDER PROTEST. Said
section has provided two methods of recovering from a county ille-
gal taxes paid under protest: First—Where the tax is claimed to be
invalid for the reason that the property is not liable for taxation,
or has been twice assessed in the same year and the taxes paid
thereon, the party may, within thirty days after paying the same,
file a verified claim with the county board setting forth the
amount of taxes paid under protest, the grounds of such protest,
and attach thereto the tax receipt, and he may appeal to the dis-
trict court from any adverse decision. Second—If the tax paid
under protest was imposed for any illegal or unauthorized purpose,
or for any reason, other than double assessment or that the prop-
erty was not subject to taxation, the tax is invalid, a suit at law
may be maintained to recover the same.

ERROR from the district court of Nemaha county.
Tried below before BABCOCK, J.   *Reversed.*

*J. W. Deweese* and *J. S. Stull*, for plaintiff in error.

*A. J. Burnham, contra.*

NORVAL, J.

This action was brought by the railroad company in
the district court of Nemaha county to recover from the
county $213.12 for taxes paid under protest, and alleged
to have been illegally and unlawfully levied in the year

1892 upon the property of the plaintiff. A demurrer to the petition was sustained by the court below, and the action dismissed, which ruling is assigned for error.

From the allegations of the petition it is disclosed that the county board of Nemaha county levied taxes in said county for the year 1892 for the following amounts: General fund, 9 mills; special road fund, 1 mill; county bridge, 4 mills; county road, 2 mills; county soldiers' relief fund, $\frac{1}{4}$ mill; total, $16\frac{1}{4}$ mills; that no vote of the people had been taken authorizing any such levies; that the assessed valuation of the property of the plaintiff in said county for said year was $213,120, and the amount of taxes imposed in excess of the constitutional and statutory limit was $213.12, which last mentioned sum plaintiff paid to the treasurer of Nemaha county on January 27, 1893, under written protest at the time duly made, and on the same day made a demand in writing upon said treasurer for the refunding to it of the amount of taxes thus paid, but that no part of the same has been refunded, and that on the 16th day of March, 1893, the county clerk of said county notified plaintiff that the county had decided, upon due consideration, not to refund the same.

The first question to be considered is whether the county board had any authority to levy a tax of $16\frac{1}{4}$ mills on the dollar valuation for county purposes. Section 5 of article 9 of the constitution of this state declares: "County authorities shall never assess taxes the aggregate of which shall exceed one and a half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of the county." The foregoing provision is clear and unambiguous. The maximum rate of taxes which county boards can impose in any one year is by it fixed at "one and a half dollars per one hundred dollars valuation," unless a greater rate is authorized by a vote of the county, except for the payment of a valid indebtedness

existing when the constitution was adopted. This is a limitation upon the power of the legislature, and it cannot authorize a levy of taxes in excess of the maximum rate named in the constitution. (*In re House Roll 284*, 31 Neb., 505; *State v. Weir*, 33 Neb., 35; *Young v. Lane*, 43 Neb., 812.) No portion of this 16¼-mill levy having been made to pay any indebtedness of the county which existed when the constitution was adopted, and it being specifically alleged that no vote of the electors of the county had ever been taken to authorize such levy, the taxes exceeding the constitutional limit levied and assessed upon plaintiff's property were illegal and void.

It is insisted that the court below had no original jurisdiction of the action, but that the remedy of plaintiff was to have presented its claim to the county board, and if the same was rejected, appeal from the decision to the district court. The determination of this question involves a consideration and construction of sections 144 and 145 of article 1, chapter 77, Compiled Statutes. Section 144, *inter alia*, provides: "In every case the person or persons claiming any tax, or any part thereof, to be for any reason invalid, who shall pay the same to the county treasurer, tax collector, or other proper authority, may proceed in the following manner, viz.: First—If such person claim the tax, or any part thereof, to be invalid for the reason that the property upon which it was levied was not liable to taxation, or that said property has been twice assessed in the same year and taxes paid thereon, he may pay such taxes under protest to the tax collector, county treasurer, or other proper authority, and it shall be the duty of the collector, treasurer, or other proper authority receiving such taxes, to give a receipt therefor, stating thereon that they were paid under protest, and the grounds of such protest, whether not taxable, or twice assessed, and taxes paid thereon.   *   *   * Within thirty days after paying such taxes, the person paying them shall file a statement in writing, duly verified, with the county board, setting forth the amount of

taxes paid under protest, the grounds of said protest, and shall attach thereto the receipt taken for said taxes. Whereupon at the first meeting of the county board thereafter, they shall enquire into the matter, and if they shall find either that the property upon which such taxes were levied, was not liable to taxation, or that it had been twice assessed in the same year, and taxes paid thereon, they shall issue an order to the county treasurer to refund said taxes, stating therein what sum shall be refunded, and if they shall find that the grounds of such protest are not true, they shall issue an order to the county treasurer to dispose of said money in the same manner as though it had not been paid under protest. Appeals may be taken from such decisions in the same manner and within the times set forth in sections 37 and 38, chapter 18, of the Compiled Statutes of Nebraska; and if such an appeal be taken, the treasurer shall retain such taxes until the case is finally determined. Provided, That he shall in all cases retain said money until the time for an appeal shall have elapsed.    *    *    *
Second—If such person claim the tax, or any part thereof, to be invalid for the reason that it was levied or assessed for an illegal or unauthorized purpose, or for any other reason, except as hereinbefore set forth, when he shall have paid the same to the treasurer, tax collector, or other proper authority, in all respects as though the same was legal and valid, he may, at any time, within thirty days after such payment, demand the same, in writing, from the treasurer of the state, of the county, city, village, township, district or other subdivision for the benefit, or under the authority, or by the request of which the same was levied, and if the same shall not be refunded within ninety days thereafter, may sue such county, city, village, township, district, or other subdivision, for the amount so demanded, and if upon the trial it shall be determined that such tax, or any part thereof, was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid, judgment shall be

rendered therefor, with interest, and the same shall be collected as in other cases."

It is very evident that the legislature has, by the foregoing section, provided two separate and distinct modes of procedure to obtain illegal taxes which have been paid under protest,—one by the presentation of a claim for such taxes, by the person paying the same, to the county board for audit and allowance, with the right of appeal from the decision provided for; and the other remedy being by suit at law to recover such taxes. But it will not escape notice that the method of procedure is determinable by the ground or grounds which render the taxes illegal. The first method provided in the section is limited to taxes imposed on property not subject to taxation, or to taxes rendered invalid by the reason of double assessment of the same property, while suit against the county, city, or other subdivision is authorized when the tax paid under protest was imposed for an illegal or unauthorized purpose, or for any reason other than for double assessment, or that the property was exempt from taxation, is invalid. The taxes in controversy in this case exceeded the maximum constitutional limit; therefore they were assessed for an illegal and unauthorized purpose within the meaning of said section 144, and the remedy by suit was the proper one to pursue.

In reaching this conclusion the provisions of section 145 of said chapter have not been lost sight of. They, it is true, authorized the treasurer, when a demand is made upon him to refund taxes paid, as provided in the second method of procedure indicated in section 144, to transmit a copy of such demand to the authorities whose duty it is to audit and pay claims against the state, county, city, etc., as the case may be, and they are required to pass upon the same as upon any other claim. This section, 145, was not enacted for the benefit of the taxpayer, but for the public, to afford the proper authorities an opportunity to pass upon and pay claims for taxes paid under

protest, which were assessed for an illegal and unauthor-
ized purpose, and thereby prevent needless litigation.
Said section does not require the person paying a tax
under protest to file a claim therefor with any board, for
audit and allowance, nor does the record before us show
that plaintiff has done so in the case at bar. The only
averment in the petition on the subject is that the county
clerk notified the company that the county had decided
not to refund the taxes, but this does not justify the in-
ference that the plaintiff presented its claim to the county
board for allowance, since by section 145 it was made the
duty of the county treasurer to transmit to such board a
copy of the demand to refund the taxes, for allowance or
rejection, which was probably done in this case. No pro-
vision is made for appeal from such action. Whether
plaintiff might have presented its claim to the county
board for allowance as a general creditor of the county,
and after an adverse decision, appealed to the district
court, it is unnecessary to decide, as the question does
not arise in this case. Under the statute it had the right
to recover the taxes by suit. The court below erred in
sustaining the demurrer to the petition, and the judg-
ment is reversed, and the cause remanded for further
proceedings.

REVERSED AND REMANDED.