CHASE COUNTY V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.

FILED MARCH 8, 1899. No. 8780.

1. **Illegal Taxes: RECOVERY FOR PAYMENTS.** The statutes provide two methods of recovering back illegal taxes paid under protest. When the tax is imposed on land not subject thereto or which has been twice assessed for the same year, the person paying the tax must present a claim to the county board, and if it be not allowed, he must, if he wishes further to contest, appeal to the district court; but if the tax be levied for an illegal or unauthorized purpose, or if the tax be bad for any other cause not falling within the first class, he may maintain an original action therefor. *Chicago, B. & Q. R. Co. v. Nemaha County,* 50 Neb. 393, followed.

2. **Taxation: LIMITATION.** When taxes levied by a county exceed the

maximum permitted by the constitution, the excess is levied for an illegal and unauthorized purpose. *Chicago, B. & Q. R. Co. v. Nemaha County*, 50 Neb. 393, followed.

3. ———: ———. The constitution permits a levy of taxes by a county in excess of 15 mills on the dollar valuation in only two classes of cases: First, to pay debts existing when the constitution was adopted; and secondly, when authorized by a vote of the people. This brings within the general limitation taxes levied to pay judgments rendered against the county on debts not contracted before the constitution was adopted, when such additional levy has not been authorized by vote of the people.

ERROR from the district court of Chase county. Tried below before NORRIS, J. *Affirmed.*

*Charles W. Meeker*, for plaintiff in error.

*J. W. Deweese*, *W. S. Morlan*, and *F. E. Bishop*, *contra.*

IRVINE, C.

For the year 1894 the county board of Chase county levied taxes to the aggregate of 16.3 mills on the dollar valuation, being apparently 1.3 mills in excess of the limit authorized by the constitution. The Chicago, Burlington & Quincy Railroad Company paid the tax so assessed against its property in the county, under protest, and then brought this suit in the county court to recover that part of the amount so paid in excess of what would have been due on a levy of 15 mills. In the county court the action was dismissed. An appeal was taken to the district court, where the county interposed a demurrer to the petition. This was overruled, and the county electing to stand on the demurrer, judgment was entered for the plaintiff. The county brings the case here.

The county contends that the case is one of a claim against the county, which must be presented to the county board, and if disallowed, taken to the district court by appeal; that, therefore, neither the county court nor the district court acquired any jurisdiction in an original action. In support of this view there are cited

various cases* sustaining the statute requiring that claims against counties shall be prosecuted in the manner indicated, and reliance is largely placed on *Richardson County v. Hull*, 28 Neb. 810. That was a case where it was claimed that taxes had been levied upon land not subject to taxation, and it was there held that a claim must be presented to the county board, and further proceedings must be by appeal to the district court. *Chicago, B. & Q. R. Co. v. Nemaha County*, 50 Neb. 393, was a case like the present. The statutes on the subject were there closely considered, and it was held that the form of procedure depends on the nature of the defect in the tax. Where it is claimed that the land is not subject to taxation, and for certain other defects, procedure must be by filing a claim. But if it be claimed that the tax was imposed for an illegal or unauthorized purpose, or for other reasons not within the first class, an original action may be brought. It was also there held that taxes levied in excess of the constitutional limit are levied for an illegal and unauthorized purpose. This disposes of the question of jurisdiction and brings us to the merits of the case.

The constitution, article 9, section 5, provides: "County authorities shall never assess taxes the aggregate of which shall exceed one and a half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of the county." The petition which was demurred to negatives the existence of either of the cases authorizing a greater levy. This would seem to be conclusive against the county. It is, however, disclosed by the petition that of the total levy of 16.3 mills, 5 mills was for a judgment fund, and it is argued that the limitation extends only to current

*Brown v. Otoe County*, 6 Neb. 111; *Stenberg v. State*, 48 Neb. 299; *State v. Buffalo County*, 6 Neb. 454; *Dixon County v. Barnes*, 13 Neb. 294; *Richardson County v. Hull*, 28 Neb. 810; *Burlington & M. R. R. Co. v. Buffalo County*, 14 Neb. 51; *Heald v. Polk County*, 46 Neb. 28.

county purposes and does not prevent a county from imposing, if necessary, taxes in excess of the limit in order to perform its duty of paying judgments. Article 6, chapter 77, Compiled Statutes, is invoked in support of this argument. That article provides for the prompt payment of judgments against a county, and imposes a duty of levying a tax for that purpose, and provides that such duty may be enforced by mandamus. The statute cannot be given an effect which would extend or conflict with the constitutional provision, and it does not necessarily require any such construction. *State v. Weir,* 33 Neb. 35, may seem at first to countenance the argument advanced. That was an application for a mandamus to compel the county board to include in its estimate the amount of certain allowed claims belonging to the relator. One defense was that the board had already in its estimate included sufficient to require a levy to the limit. This court held that this was no excuse for not paying the relator. The levy had not been made, and the effect of the case is merely that the duty of paying such indebtedness cannot be evaded by making estimates for future expenses sufficient to exhaust the taxing power. That this was the entire scope of the case is evident from the last part of the opinion, where it is intimated that were it shown that the payment of the claims would restrict the revenues for other purposes so as to interfere with the current government of the county, payment by installments only might be required. It also appears from the fact that the syllabus, prepared by the author of the opinion, states distinctly the constitutional limitation and does not indicate that the court was establishing an exception thereto. *Jackson v. Washington County,* 34 Neb. 680, is also relied on. There a special levy had actually been made to pay a judgment. The action was for an injunction to prevent the enforcement of the tax. It was decided that such a special levy might be made during the year, and need not necessarily be made or included in the annual levy. It did not appear that the special

levy together with the annual levy exceeded the limit, and as the board had made the levy, it is to be presumed that it did not exceed that limit.

There is indeed no room for construction of the constitutional provision. The aggregate of taxes to be imposed by a county can exceed 15 mills only in two cases: First, when levied to pay a debt existing at the adoption of the constitution; second, when authorized by vote of the people. In all other cases the limitation applies, and no statute and no general equitable considerations can permit it to be disregarded. The fact that there were excepted from the operation of the section debts existing when the constitution was adopted shows that it was not the intention to except debts not at that time existing. Nothing could be plainer. The object of the exception is evident. It was to avoid the impairment of contracts by taking away a means of enforcement existing when they were made. It was not a general purpose to permit any burden to be imposed if county officers could contrive to in some way pledge the credit of the county.

AFFIRMED.