## CITY OF OMAHA V. HELEN HODGSKINS.

FILED NOVEMBER 5, 1903.    No. 13,069.

1. **Taxes:** SPECIAL ASSESSMENTS. The provisions of section 144, article 1, chapter 77, Compiled Statutes, 1901, apply to special assessments as well as to taxes levied for general purposes.

2. **Statute:** METROPOLITAN CITIES. *Held*, That the provisions of this section were made applicable to cities of the metropolitan class by the repeal of section 69 of the charter of metropolitan cities in 1891.

3. **Title of Act.** The title, "An act to provide a system of revenue," is broad enough to include provisions for special assessments.

4. **Illegal Taxes:** ACTION. A taxpayer who has complied with the provisions of section 144, article 1, chapter 77, Compiled Statutes, 1901, may bring an original action against a city or county to recover illegal taxes paid, without filing his claim before the city council or board of county commissioners.

ERROR to the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Carl C. Wright* and *William H. Herdman,* for plaintiff in error.

*Henry W. Pennock, contra.*

OLDHAM, C.

The material averments of the petition filed in this case are: That the city of Omaha is a city of the metropolitan class; that on November 10, 1899, December 20, 1899, April 9 and 12, 1900, respectively, plaintiff and her assignors paid to the city, under protest, certain illegal special taxes and assessments theretofore levied and assessed by the city against and upon the real estate owned by the plaintiff and her assignors; that, within thirty days after each of said payments, due demand was made in writing for the return of the same; that said payments have never been refunded or returned, and that each and all of said special taxes and assessments, so paid, were illegal and void. At the trial of the cause, the city ob-

jected to the introduction of any evidence, because plaintiff's petition failed to state a cause of action; the objection was overruled, and judgment was rendered for plaintiff for the amount of the special taxes and assessments paid, and the city brings error to this court.

It is conceded that the taxes paid are illegal and that they were paid under protest, and that demand was made in writing upon the treasurer for the return of the taxes before suit was instituted, so that the issues presented to this court are of law and not of fact.

The first contention is that section 144, article 1, chapter 77, Compiled Statutes, 1901, on which the action is founded, does not authorize the recovery by suit of special taxes and assessments paid under protest. This contention is based on the theory that the words "any tax" used in this section does not authorize a suit for special assessments. This position, however, we think flies in the face of the decision of this court in *Wilson v. City of Auburn*, 27 Neb., 435, in which it was held that the provisions of this section applied to special assessments as well as taxes levied for general purposes; again, in the act itself, a tax is defined as "any tax, special assessments, or costs, interest or penalty imposed upon property." Compiled Statutes, 1901, ch. 77, art. 1, sec. 182. Hence the plain language of the statute itself indicates the intent of the legislature to apply its provisions to special as well as general taxation.

It is further contended that, even if the provisions of section 144, *supra*, are applicable to special assessments by cities of the first and second classes, these provisions can not be made to apply to cities of the metropolitan class. The reason assigned is that the charter of metropolitan cities went into effect March 30, 1887, and section 144, *supra*, went into effect on the following day. The charter of 1887 provided a particular mode of paying special assessments under protest, and for an action to recover the same, and made that remedy exclusive, thereby taking it out of the general law. The city further argues that when

the metropolitan charter went into effect there was no statute providing for the payment, under protest, and recovery of illegal special assessments, and, as an exclusive remedy was provided in the charter, it could not have been the intention of the legislature, at the same session, to provide an independent remedy. The trouble with this contention is that section 144 was originally enacted as a part of the revenue act of 1879, and in its original form it contained all the provisions relied upon in this action, and, by the act of 1887, it was simply amended so as to cover a different class of cases; in other words, what is denominated in the section, the first mode of paying taxes under protest, was added to the original section, and the amendment did not change the second or old method of paying taxes under protest, as contained in the original section. So that, when the charter of metropolitan cities took effect, there was a general provision for payment under protest, and recovery of special assessments; consequently, when section 69 of the charter of metropolitan cities, which provided a special method of paying taxes under protest, was repealed in 1891, it left the general law applicable to cities of the metropolitan class, as well as cities of other classes.

It is next urged that the title of the act of 1879, which is, "An act to provide a system of revenue," is not broad enough to include special assessments, and, consequently, that the portion of the act referring to special assessments should be declared void, as not having been fairly expressed in the title of the bill. Cases are cited in which the word "revenue" has been confined in a restricted sense to taxes and assessments for purely governmental purposes, as distinguished from those levied where a direct return is made to the citizen. With the reasoning of these cases, under the facts litigated, we have no quarrel, but none of them go to the question of the sufficiency of the title of an act, providing for a system of revenue, to include a provision governing special assessments. This presents the question, whether, for the purposes of upholding or defeating the ends of legislation, the word "revenue" should be construed,

in its generic sense, to include all the money raised by any form of taxation or, in its restricted sense, to only apply to taxes levied for general purposes. This question was before the supreme court of Kansas in the case of *State v. Ewing*, 22 Kan. 708, to determine whether the title of "An act to provide revenue," etc., was broad enough to include a provision with respect to the annual income of the state, derived from interest and rent of the school fund. In disposing of the case, the court said:

"Preliminarily we remark, as conceded law: First, that courts will not, upon mere doubts of its constitutionality, declare a law invalid. The conflict with the constitution must be manifest. Second, mere awkwardness of expression does not overthrow a statute. The substance, and not the form, governs. Third, the intent determines the scope and effect of a statute. It may restrict or enlarge the ordinary meaning of language. Not that an unexpressed intent is law, but a manifest intent interprets the words used. Not infrequently the 'letter killeth, but the spirit giveth life.'

"The act of 1879 is entitled 'An act to provide revenue,' etc. Now, how broad is the term 'revenue,' and what may be included in such a title? Does it mean simply funds raised by taxation, and is the levying of taxes all that may be included? Such would seem to be the views of the counsel for the state, but we can not think them correct. One of the definitions given by Webster of the term is 'the annual yield of taxes, excise, customs, duties, rents, etc., which a nation, state or municipality collects and receives into the treasury for public use.' The word is broad and general, and includes all public moneys which the state collects and receives, from whatever source and in whatever manner."

We think the rule of liberally construing the title of an act for the purpose of upholding its constitutionality is in harmony with a long line of decisions of this court. *Rosenbloom v. State*, 64 Neb. 342; *In re White*, 33 Neb. 812; *Affholder v. State*, 51 Neb. 91.

The only other question urged is that plaintiff should have filed her account with the city council and, if its payment were denied, she should have prosecuted an appeal to the district court, instead of bringing an original action. This question was decided against the contention of the city in the recent case of. *Chase County v. Chicago, B. & Q. R. Co.*, 58 Neb. 274. The action there was brought against Chase county originally, without filing the claim with the board of county commissioners, and it was held that the statute requiring the filing of claims with the county board did not apply to claims of this nature, and that an independent action might be prosecuted against the county after the steps required by section 144 had been taken by the taxpayer.

It is therefore recommended that the judgment of the district court be affirmed.

HASTINGS and AMES, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.