CHICAGO & NORTH WESTERN RAILWAY COMPANY, A CORPORATION, APPELLEE, V. CITY OF OMAHA ET AL., APPELLANTS.

57 N. W. 2d 753

Filed March 27, 1953. No. 33229.

*Edward F. Fogarty, Herbert M. Fitle, James M. Paxson,.* and *Bernard E. Vinardi,* for appellants.

*Neely, Otis & Cockle* and *Nelsen Trottman,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,. YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a suit to enjoin the collection of a special assessment levied by the City of Omaha upon the real estate of the Chicago & North Western Railway Company, a corporation, consisting of a railroad right-of-way in street Improvement District No. 4199, which was organized for the purpose of paving and installing curbs. and gutters in Redman Avenue between Thirty-third Street and Thirty-sixth Street. The amount of the special assessment levied against the plaintiff railroad's property was $4,715.53, the total amount of the assessment for improvement being $13,220.90. The plaintiff prayed that the special assessment be declared to be-

void and of no force and effect as against its property and declared not to be a lien thereon; that the defendants, and each of them, be enjoined from proceeding or attempting to proceed to collect the special assessments, and be directed to cancel the tax on their records; and that title of plaintiff be quieted against said special assessments.

The trial court entered a decree declaring the assessments to be void and not a lien on the plaintiff's property, based upon a finding that said property was not benefited in any amount as a result of the paving of Redman Avenue, and that the assessment was for an illegal and unauthorized purpose.

The defendants filed a motion for new trial. Upon the overruling of the motion, defendants appeal.

For clarity and convenience we will refer to the appellants as the city, and the appellee as the railroad, or company.

The city contends that the judgment of the trial court is contrary to the evidence and the law.

The record discloses that the right-of-way of the railroad company consists of a strip of ground carrying a single track, running from the northeast to the southwest, and that part of it lying between Thirty-third Street and Thirty-sixth Street was included in Improvement District No. 4199 created for the purpose of paving Redman Avenue. Redman Avenue veers to the northwest at Thirty-fourth Street as shown by the city's exhibit No. 7, and is separated from the right-of-way by four different parcels of land on which houses are built.

A. W. Kendall, engineer for the railroad company, made a survey of the company's right-of-way between Thirty-third Street and Thirty-sixth Street. In doing so he took elevations of the track and the road, Redman Avenue, and the land between, and prepared an exhibit covering the same which is in evidence. He testified there were no open streets between Thirty-third and Thirty-sixth Streets crossing the railroad right-of-way.

The first open street to the west of Thirty-sixth Street is Thirty-seventh, where the railroad right-of-way may be crossed from north to south. This is also true at the east end, at Thirty-third Street. The elevation of the ground at the northern right-of-way line, which is the south line of Redman Avenue, is about 3 feet above the center line of the pavement at that point, and between the base of the rail of the track and the center line of the paving the elevation is 5 feet. Two hundred feet west of Thirty-third Street the track is 10 feet higher than the center line of the pavement. The separation of the railroad right-of-way and Redman Avenue starts at the west line of Thirty-fourth Street, which is halfway between Thirty-third and Thirty-sixth Streets. Between Thirty-fourth Street and Thirty-sixth Street there is a very abrupt hill. On the strip of ground south of Redman Avenue and between Redman Avenue and the railroad right-of-way are four residences between Thirty-fifth Street and Thirty-sixth Street. The right-of-way is not accessible to Redman Avenue between Thirty-fourth Street and Thirty-sixth Street from the north. The intervening streets between Thirty-third Street and Thirty-sixth Street are dead-end streets as far as crossing the track is concerned. There is a dirt road which runs parallel to the railroad track along the south side of the right-of-way which connects those streets, but does not cross the track. The elevation increases gradually proceeding west from Thirty-fourth Street, and at Thirty-fifth Street the difference between the street level and the right-of-way is 15 feet. At Thirty-sixth Street the difference in elevation between the street level and the right-of-way is almost 30 feet. Proceeding west from Thirty-third Street the track was built through a cut which was made when the track was originally constructed. The railroad right-of-way is 100 feet wide for the full length of the district, except that for about one-half block east of Thirty-sixth Street it is 160 feet wide, and for a little distance west

of Thirty-sixth Street it is 150 feet wide where the track runs through the deepest cut on the right-of-way. The extra footage of right-of-way was for the wasting of the dirt which was dipped out of the cut onto the bank and slid down onto a certain amount of land, which has changed the position of the land. This ground was acquired by the railroad company to permit grading without trespassing on the abutting property. The general nature of the area on either side of the right-of-way between Thirty-third and Thirty-sixth Streets is residential. There is nothing in the paving of Redman Avenue that would in any way be helpful to the railroad from the standpoint of drainage, for the reason that the track through this district is built at a 1 percent grade, and as to drainage the railroad is supplied by a ditch on each side of the ties. There is no place along the right-of-way that is suitable for industry. None is contemplated at this time, nor is there any evidence to show that the tract in this right-of-way will be used for any other purpose than that for which it is now used. There are no buildings of any kind at any point on the right-of-way between Thirty-third and Thirty-sixth Streets. At one point at the east end of the track leading off from what is called the main line, there are two tracks; one goes to Fort Omaha and the other to an industry located west of Thirtieth Street a little more than two city blocks east of Thirty-third Street. The extreme high point of the railroad property between the streets as heretofore designated is 20 feet above the track and 30 feet above the paving. The track is used for trainloads of freight from Elkhorn Junction to Irvington, or the Irvington Y to South Omaha. The only railroad property that could be harmed in the event of fire would probably be what ties there are under the track at Thirty-third Street. This is the only construction, in addition to the crossing, that would be harmed by fire. This witness further testified there are no bridges or viaducts within the dis-

trict, the closest viaduct being on Thirtieth Street; that there are about three locations between Elkhorn Junction, which is in Omaha, and Irvington where industries are served by spotting cars on their loading tracks; that under certain conditions, if any industry is built up near the railroad, it would be served by a spur from this line; and that there are no trestles in this vicinity that could be affected by a fire.

A civil engineer connected with the city for 20 years surveyed the district and checked the measurements and elevations. His testimony substantially corroborates that of the railroad engineer with respect to no accessibility to the railroad right-of-way from Thirty-third Street through Thirty-sixth Street, and that there was not much difference in the elevations between the paving at Thirty-third Street and the railroad property. Proceeding west the elevation of the track rises and the street depresses so that the track is considerably higher than the Redman Avenue paving, and to the extreme west end the elevation is 12 to 14 feet above the paving. There would be no necessity for the fire department to use Redman Avenue in approaching the intersection at Thirty-third Street and the railroad right-of-way. The crossing at Thirty-third Street is composed of asphalt and gravel. This witness gave as his opinion that no benefit would accrue to the railroad company by virtue of the paving of Redman Avenue for the reason that what property there is between the railroad right-of-way and Redman Avenue does not have sufficient depth to meet the requirements of industry. The only benefit would be the accessibility to the track by street network, and because of the terrain or because of the difference in elevation this would be nullified.

Another civil engineer checked the railroad property between Thirty-third and Thirty-sixth Streets. His testimony as to elevations was substantially that of the preceding witness, that the right-of-way was approximately 12 feet above the pavement at certain points. He

thought it might be possible to carry Thirty-sixth Street over the track on an overhead crossing at the west end of the district, but any other crossings would not be considered good for the purpose of crossing the tracks.

A former city engineer testified that he had examined the improvement district in question; that the property was generally residential; that the railroad right-of-way runs through a rather heavy cut between Thirty-third and Thirty-sixth Streets south of the houses in certain photographs in evidence; and that in his opinion the railroad company's property would not be benefited by the pavement laid along Redman Avenue.

The division engineer for the railroad company surveyed the district in which the paving was located. He testified that the railroad property was of such a size that it could not be used for industry; that the difference in elevation was objectionable; that it was the policy of the railroad not to permit industry to lease any portion of a normal right-of-way; that there is no industry located within the district and the surrounding territory is residential; that no industry is contemplated at the present time; that the track is used primarily as a freight line; and that no benefit could accrue to the railroad company by virtue of the paving of Redman Avenue.

The city engineer, who had been connected with the engineering department for 40 years, testified that special assessments are made under his supervision; that the benefits to the railroad property would be the same as to any other piece of real estate abutting on improved roads, for the reason that a paved street gives an all-weather roadway, good ingress and egress, and is better for fire protection; and that the railroad real estate is in the same condition as other real estate on the south side of Redman Avenue where there are four houses the owners of which petitioned for the paving, and they are benefited.

While there is some contention that the railroad com-

pany's engineer did not, by his findings, give a proper résumé of the elevations, this has been taken into consideration, together with all of the evidence.

The city raises the defense that the railroad company was not in a position to bring this action for the reason that it failed to conform to the provisions of the city charter, article III, sections 40 and 41, appearing as sections 14-343 and 14-344, R. S. 1943. Article VII, section 13, of the city charter, appearing as section 14-813, R. S. 1943, is also cited.

Article III, section 40, appearing as section 14-343, R. S. 1943, provides the remedy of appeal shall be exclusive.

Article III, section 41, appearing as section 14-344, R. S. 1943, provides any person protesting against a petition for an improvement, as provided in the city charter, shall have the right to appeal within 10 days from the finding and judgment of the city council, to the district court of the county in which the city is located, upon the filing of a good and sufficient bond in the sum of $2,000, with two or more sureties thereon, to be approved by the clerk of the city. Other provisions are made with reference to the appeal in this section which need not be stated.

Article VII, section 13, appearing as section 14-813, R. S. 1943, provides it is the duty of the claimant, or appellant, to file a petition in the district court as in the commencement of an action, within 30 days from the date of the order or award appealed from, and filing transcript before answer day.

The railroad company raises the question that under the provisions of section 14-547, R. S. 1943, the city had no right or authority to levy special assessments against part of the railroad company's right-of-way for the reason that the cited section provides for the publication of a notice, and designates how the publication should be made when the city council sits as a board of equalization; and that by virtue of the failure of the city to comply with said section of the statute the rail-

road company was denied the opportunity to file a written complaint with the city clerk and to appear before the board of equalization, as provided by law, and was denied and deprived of its constitutional right to be heard.

The city relies on article IV, section 55, of the city charter, appearing as section 14-566, R. S. 1943, to the effect that where there is an absence of an official newspaper, which was true at the time of the passing of the ordinance in question, and the amount provided for payments of publication of official notices is limited, and no bid of a newspaper which could qualify as an official newspaper was had, the city could resort to said section of the statute by posting notice on the bulletin board in the city hall. It was stipulated at the trial that the required publication was accomplished by the posting of a notice on the bulletin board in the city hall and not by a publication in a newspaper. The city's contention is that because of the failure of the railroad company to conform to the provisions of the city charter and statutory sections pertinent thereto as above summarized, the district court was not vested with jurisdiction to determine the legality of the special assessment levied by the city against the railroad's property.

The railroad company takes the position in the event such notice does not violate the procedural requirements that it has the right to collaterally attack the legality of the special assessment. In this connection, decisions of this court have settled the proposition that a taxpayer is not limited to a direct appeal from the finding of an assessing body but may in a proper case resort to collateral attack, citing section 77-1727, R. R. S. 1943, which provides: "No injunction shall be granted by any court or judge in this state to restrain the collection of any tax, or any part thereof, nor to restrain the sale of any property for the nonpayment of any such tax, nor shall any person be permitted to recover by replevin, or other process, any property taken or restrained by the county treasurer for the nonpayment of any tax, *except such*

*tax or the part thereof enjoined in case of injunction, be levied or assessed for an illegal or unauthorized purpose."* (Emphasis supplied.)

Section 77-1729, R. R. S. 1943, makes reference to a claim made that the tax is invalid for the reason that the property on which it was levied was not liable to taxation, or had been twice assessed, permitting the taxpayer to pay such taxes under protest to the county treasurer, or other proper authority, and obtain a receipt stating that the tax was paid under protest and the grounds of the protest.

Section 77-1735, R. R. S. 1943, provides: "If a person claim a tax, or any part thereof, to be invalid for the reason that it was levied or assessed for an illegal or unauthorized purpose, or for any other reason except as set forth in section 77-1729, when he shall have paid the same to the treasurer, or other proper authority, in all respects as though the same was legal and valid, he may, at any time within thirty days after such payment, demand the same in writing from the State Treasurer or the treasurer of the county, city, village, township, district or other subdivision, for the benefit, or under the authority, or by the request of which the same was levied, and if the same shall not be refunded within ninety days thereafter, may sue such county, city, village, township, district or other subdivision for the amount so demanded. Upon the trial, if it shall be determined that such tax, or any part thereof, was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid, judgment shall be rendered therefor with interest and the same shall be collected as in other cases."

While reference is made to sections 77-1727, 77-1729, and 77-1736, R. R. S. 1943, the purpose for so doing is to disclose that a taxpayer may establish his rights by a separate action at law or in equity thereunder, as will become evident by the following authorities deemed pertinent to this phase of the case.

In the case of City of Omaha v. Hodgskins, 70 Neb. 229, 97 N. W. 346, the tax was paid under protest. It constituted a special assessment levied by the city on claimant's real estate. The claim was that the tax was illegal. The city contended the words "any tax" in the statute which is now section 77-1729, R. R. S. 1943, did not include special assessments. The court cited Wilson v. City of Auburn, 27 Neb. 435, 43 N. W. 257, wherein it was held that the provisions of the section applied to special assessments as well as taxes for general purposes. It was argued that the plaintiff should have filed her account with the city council and, if its payment was denied, she should have prosecuted an appeal to the district court instead of bringing an original action. This question was decided against the city in Chase County v. Chicago, B. & Q. R. R. Co., 58 Neb. 274, 78 N. W. 502. The action there was brought against Chase County originally, without filing the claim with the board of county commissioners, and it was held that the statute requiring the filing of claims with the county board did not apply to claims of this nature, and that an independent action might be prosecuted against the county after the steps required by section 144 had been taken by the taxpayer. Section 144, article I, chapter 77, Comp. St. 1901, is the counterpart of section 77-1729, R. R. S. 1943.

In the Chase County case the county board levied taxes in excess of the constitutional limit. The railroad company paid the tax under protest and brought suit to recover the amount paid in excess of the constitutional limit. The court said: "But if it be claimed that the tax was imposed for an illegal or unauthorized purpose, or for other reasons not within the first class, an original action may be brought. It was also there held (Chicago, B. & Q. R. R. Co. v. Nemaha County, 50 Neb. 393, 69 N. W. 958) that taxes levied in excess of the constitutional limit are levied for an illegal and unauthorized purpose."

In Union P. R. R. Co. v. Troupe, 99 Neb. 73, 155 N. W. 230, it was held: "Injunction will lie to restrain the collection of a tax levied or assessed for an unauthorized or illegal purpose."

In the case of Hayman v. City of Grand Island, 135 Neb. 873, 284 N. W. 733, the defendant city levied a special assessment on plaintiff's property for payment of expenses and damages occasioned by the widening of a street. The plaintiff paid the tax and brought an original action to recover the same, alleging that the assessment was for an illegal purpose; that it was in excess of the benefits to said property; and that it was confiscation of property without due compensation and without due process of law. Section 77-1923, Comp. St. 1929, is cited, which conforms to section 77-1727, R. R. S. 1943, as heretofore set out. However, the cited section in the opinion covers matters that now appear in other sections of the statute heretofore cited. The opinion held that under section 77-1923, Comp. St. 1929, a bringing of an original action was authorized to recover taxes paid, where the taxpayer claims that the tax was levied or assessed for an illegal or unauthorized purpose. The following cases were cited: Chase County v. Chicago, B. & Q. R. R. Co., *supra;* City of Omaha v. Hodgskins, *supra;* and Cain v. City of Omaha, 42 Neb. 120, 60 N. W. 368. The court went on to say, quoting from Cain v. City of Omaha, *supra:* " 'The only foundation for a local assessment lies in the special benefits conferred upon the property assessed, by the improvement to pay which the assessment is made, and an assessment beyond the benefit so conferred is a taking of property for public use without compensation, and therefore illegal.' " See, also, Loup River Public Power Dist. v. County of Platte, 144 Neb. 600, 14 N. W. 2d 210.

In the case of Wead v. City of Omaha, 124 Neb. 474, 247 N. W. 24, the complaint was that the taxpayers were not benefited by the widening of certain streets in the city. No charge was made that taxes were as-

sessed for an illegal or unauthorized purpose, or were invalid for any other reason. The court recognized the exceptions to the general rule that defects and irregularities in the making of special assessments cannot be questioned in a collateral proceeding, and that an assessment grossly in excess of benefits can be attacked. The court said: "To the rule thus announced there are some apparent exceptions. For instance, where the record discloses that the physical facts are such that the property was not and could not have been specially benefited, or could not have been benefited to any extent approaching the assessment, such facts have been in some cases held to show that the levy of assessment was arbitrary and constructively fraudulent, and therefore void, and might be attacked collaterally. * * * The rule in such cases is stated in Hamilton, Law of Special Assessments, sec. 760, wherein it is said: 'Where an assessment for street improvements is arbitrary and fraudulent, and therefore void, the appeal provided by the charter is not the only remedy. The person aggrieved may have his remedy in equity, or a common-law action for damages. *Equity will enjoin the collection of a void local assessment, and taxpayers are not relegated to an appeal from an assessment.*'" (Emphasis supplied.)

"And when it is plainly and palpably manifest from the physical condition of the property involved, its locality, environment, character of the work or improvement, assessment, and from the very nature of things, that an assessment is not adapted to the purpose, and is an exaction from the property owner of a contribution which he should not be obliged to make in that capacity, the courts will interfere to prevent a consummation of the injustice." 25 R. C. L., Special or Local Assessments, § 58, p. 141.

The general rule in this state in construing applicable statutes is that the legislative power and authority delegated to a city to construct local improvements and levy

assessments for payment thereof is to be strictly construed and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer. See, Besack v. City of Beatrice, 154 Neb. 142, 47 N. W. 2d 356; Chicago & N. W. Ry. Co. v. City of Omaha, 154 Neb. 442, 48 N. W. 2d 409; Cullingham v. City of Omaha, 143 Neb. 744, 10 N. W. 2d 615; State ex rel. Todd v. Thomas, 127 Neb. 891, 257 N. W. 265, 96 A. L. R. 1470.

We conclude that the railroad company had a right to resort to the remedy of injunction.

The railroad company asserts its sole interest in the right-of-way is derived from a deed which contained a provision limiting its interest to the use of the property for railroad purposes; that if this use should be abandoned by the grantee, title would revert to the grantor or her heirs and assigns; that the railroad, as presently constituted, acquired title by assignment from the original grantee and therefore its rights are subject to the same conditions; and consequently, the railroad has no title or interest to this property except as it shall be used for railroad purposes.

The railroad company contends that a naked right-of-way is not subject to a special assessment for a municipal project for the reason that by the special use to which the property is devoted, the owner thereof cannot, by the nature of things, derive any present or reasonable prospective benefit from such improvement. Several cases are cited by the railroad company from foreign jurisidictions that are in accord with its contention. We deem it unnecessary to set forth the holdings of such cases or to distinguish them from the cases of this jurisdiction touching upon the same subject. We believe this proposition has been determined by the following authorities insofar as this jurisdiction is concerned.

In Chicago & N. W. Ry. Co. v. City of Omaha, *supra,* the following authorities are set forth.

In Chicago & N. W. Ry. Co. v. City of Albion, 109 Neb. 739, 192 N. W. 233, it was concluded that a railroad company's right-of-way and other real property specially benefited by a public improvement was liable for special assessments in its general relations and apart from its particular use for railroad purposes, in the same manner and upon the same basis as other property owners in a public improvement district. See, also, Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819.

In 2 Elliott on Railroads (3d ed.), § 950, p. 358, it is said: "* * * there is a conflict in the adjudicated cases as to whether or not the right of way of a railroad company is subject to local assessments. The question has been discussed in a great number of instances, and different conclusions reached in apparently similar cases. The latest authorities on the subject, however, recognize what we believe to be the true rule, and that is, that, where the right of way receives a benefit from the improvement for which the assessment is levied, and there is no statute exempting the railroad company from local assessments in clear and unequivocal terms, it is subject to assessment." See, also, McQuillin, Municipal Corporations, Revised Volume 5 (2d ed.), § 2199, p. 812; 48 Am. Jur., Special or Local Assessments, § 111, p. 660; 63 C. J. S., Municipal Corporations, § 1334, p. 1070; Annotation, 82 A. L. R. 426, all of which are cited and set out in Chicago & N. W. Ry. Co. v. City of Omaha, *supra*.

We conclude that the contention of the railroad company in such respect cannot be sustained.

When a party attacks a paving assessment for the reason that it is illegal, or for an unauthorized purpose, the burden is on him to prove the invalidity of the assessment, or that it was for an unauthorized purpose. See, Munsell v. City of Hebron, 117 Neb. 251, 220 N. W. 289; Whitla v. Connor, 114 Neb. 526, 208 N. W. 670; City of Superior v. Simpson, 114 Neb. 698, 209 N. W.

505; Chicago & N. W. Ry. Co. v. City of Albion, *supra;* Chicago & N. W. Ry. Co. v. City of Omaha, *supra*.

The physical facts established by the record, coupled with the supporting testimony of the engineers who testified in behalf of the railroad company, sustain the burden of proof imposed upon it.

The city offered no evidence that would in any way indicate that under the factual situation the railroad company was in any manner benefited by the public improvement. The paving on Redman Avenue does not abut the right-of-way of the railroad except for a short distance at the east end, and there, at a different level. Leaving Thirty-third Street it veers to the northwest at an angle, and for more than half the distance of the three blocks spanned by the improvement district the pavement is entirely shut off from the railroad track by a high bank on which are located several houses, making the right-of-way wholly inaccessible from the street. The city council found that the railroad right-of-way was benefited in an amount of $4,715.53 out of a total expenditure of $13,220.90, which, under the facts adduced, would be wholly in excess of any benefits, if such existed, to the railroad right-of-way, and, in fact, constitutes an invalid assessment under the holdings of this court heretofore set out.

We make reference to the language in Wead v. City of Omaha, *supra,* and to that part thereof to the effect that where an assessment for street improvements is arbitrary and fraudulent, a person so aggrieved may have a remedy in equity to enjoin the collection of a void local assessment, and when it is plainly and palpably manifest from the condition of the property involved, its locality, environment, character of the work or improvement, assessment, and from the very nature of things, that an assessment is not adapted to the purpose, and is an exaction from the property owner of a contribution which he should not be obliged to make in

that capacity, the courts will interfere to prevent a consummation of the injustice.

We conclude, for the reasons given in this opinion, that the judgment of the trial court should be affirmed.

AFFIRMED.