CHICAGO & NORTH WESTERN RAILWAY COMPANY, A
CORPORATION, APPELLEE, v. CITY OF OMAHA, A
MUNICIPAL CORPORATION, APPELLANT.
48 N. W. 2d 409

Filed June 14, 1951. No. 32973.

*Edward F. Fogarty, Edward Sklenica, James M. Paxson,* and *Herbert M. Fitle,* for appellant.

*Neely, Otis & Cockle,* for appellee.

*Perry & Perry,* amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is an appeal from a special assessment levied by the city council of Omaha upon plaintiff's right-of-way included in a municipal paving district in which the lots, lands, and real estate of other owners included therein were also assessed under the same plan of assessment. Street improvement district No. 4142 was duly organized for the purpose of constructing paving, curbs, and gutters along Forty-second Street in the city of Omaha, between Redman Avenue and Redick Avenue. Forty-second Street runs north and south and the railroad right-of-way runs out of Omaha toward Irvington in a northwesterly direction, crossing Forty-second Street slightly diagonally at Hartman Avenue. The right-of-way is 100 feet wide, and the intersection with the railroad is wider than the intersection with Hartman Avenue, an unpaved street intersecting only on the east. The railroad was assessed only for as much of its right-of-way as is not included within the boundary lines of Hartman Avenue extended, and one-half the cost of paving the intersection of the streets was not assessed to the property owners in the improvement district but paid out of the city's intersection fund. There is a cinder roadbed approximately 10 feet wide, with a single track laid in the center of the right-of-way. Other property owners assessed in the improvement district under the same plan of assessment are owners of platted lots, vacant or improved, some of which are only 40 feet wide.

The paving of Forty-second Street was constructed under contract with the city pursuant to petition of in-

terested property owners and the usual published notice of intention to pave and for selection of materials. A plan of assessment was worked out by the department of public improvements of the city, of which the owners had notice, pursuant to which plaintiff filed objections that the city was without any statutory authority to levy special assessments upon its right-of-way and that its right-of-way received no benefits from the improvement.

The plan of assessment was upon a scaling-back and graduating process with reference to benefits conferred by the improvement as provided by section 14-545, R. S. 1943. Each assessment, estimated to be uniform and not in excess of the benefits conferred by the improvement, was approved by the city council acting as a board of equalization. After overruling the railroad's objections, it was found by the board that the various lots, lands, and real estate included within the district had been benefited by reason of the improvement to the extent of the full amount of the assessment thereon. Thereafter in due time an ordinance levying the special tax and assessment was adopted by the city council and an assessment of $708.52 was imposed upon plaintiff's right-of-way as lands and real estate referred to therein.

Thereafter, plaintiff filed its bond with the city clerk as required by law, and perfected an appeal to the district court. There the issues were tried to the court, whereat evidence was adduced and a decree was rendered finding that plaintiff had a 100-foot right-of-way, devoted primarily to the operation of trains, without depots, sheds, warehouses, loading docks, or industries located on that part of its right-of-way within the improvement district, and that there was not sufficient evidence to support a finding that such part of plaintiff's right-of-way was then or would be in the future specially benefited in any particular by the improvement. It adjudged that the special assessments were

therefore null and void, and discharged plaintiff's property from the lien thereof.

Defendant's motion for new trial was overruled, and it appealed, assigning that the judgment was not sustained by the evidence but contrary thereto and contrary to law. We sustain the assignments.

There are two questions presented for decision. The first, a question of law, is whether or not plaintiff's right-of-way could be lawfully assessed for the improvement. The second, a question of fact arising only if the first should be answered affirmatively, is whether or not there has been such a showing of lack of benefits as to make the assessment void. With reference to the first question, the city's authority to create the improvement district, contract for and construct the paving, and levy special assessments on all lots, parts of lots, lands, and real estate within the district specially benefited by such improvement to cover the cost thereof, and its procedure generally in doing so, is not questioned here. In that regard, plaintiff's counsel argued that its 100-foot right-of-way, carrying a single center standard track used for the passage of freight trains across the city but not then and there serving, adjacent to, or abutting on any industrial sites, depots, warehouses, or other railroad property, could not be subjected to special assessments, under applicable statutes to defray the costs of paving. Defendant's counsel argued otherwise, and we sustain that contention.

Section 14-545, R. S. 1943, provides: "All special assessments to cover the cost of any public improvements herein authorized shall be levied and assessed on *all lots, parts of lots, lands, and real estate* specially benefited by such improvement, or within the district created for the purpose of making such improvement, to the extent of the benefits to such *lots, parts of lots, lands, and real estate* by reason of such improvements, such benefits to be determined by the council sitting as a board of equalization. Where they shall find such benefits to

be equal and uniform, such assessment may be according to the foot frontage, and may be prorated and scaled back from the line of such improvements according to such rules as the board of equalization shall consider fair and equitable." (Italics supplied.)

Section 14-543, R. S. 1943, provides: "The word 'lot' as used in this act shall be taken to mean a lot as described and designated upon the recorded plat of any such city, and in case there is no recorded plat of any such city, it shall mean a lot as described and designated upon any generally recognized map of such city. The word 'lands' shall mean any unsubdivided real estate. The word 'street' shall be deemed to include boulevards, avenues, alleys and lanes, or any form of public roadway in the city."

In that connection, other related sections in article 3, Chapter 14, R. S. 1943, giving the municipality authority to pave and outlining procedure therefor, use designations such as: "the abutting, adjacent and benefited property proposed to be assessed"—"the property in such district"—"the property within the improvement district"—"taxable property abutting"—"property owners"—"foot frontage of taxable property"—"lots and parcels of land"—"property especially benefited"—"such property"—"lots and parcels of land abutting"—"taxable foot frontage abutting"—"owners of any property"—"property owners within any district"—and "taxable property."

In construing applicable statutes, we are mindful of the rule that: "The legislative power and authority delegated to a city to construct local improvements and levy assessments for payment thereof is to be strictly construed and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer." Besack v. City of Beatrice, *ante* p. 142, 47 N. W. 2d 356.

At the outset it should be stated that this is not a case where a track, as the only property of the railroad, oc-

cupies the street or runs longitudinally or parallel on the paved public street, as were those involved in the authorities cited in Annotation, 29 A. L. R. 679, and those relied upon in plaintiff's brief. Rather, this is one running across the pavement with available right-of-way lands or real estate adjoining each side of the track, approximately 45 feet wide and 300 feet long, abutting upon each side of the pavement.

As stated in Annotation, 37 A. L. R. 228: "Municipal authorities having no inherent power to levy assessments for local improvements can only do so when authorized by the legislature (see 25 R. C. L. 88); it is generally held, however, that authority for assessing a railroad right of way exists by virtue of statutory provisions authorizing the levying of assessments for local improvements on 'owners of land,' 'lots or parcels of land,' 'pieces of land,' 'lands or property,' etc., benefited by or abbutting (abutting) on the proposed improvements, without the necessity of there being specific mention of assessing railroad property or roadbeds." As stated on page 255: "The weight of authority holds that a railroad right of way may be benefited by the improvement of an abutting or adjacent street, and liable for an assessment for the cost of such improvement." See, also, 48 Am. Jur., Special or Local Assessments, § 111, p. 660; 63 C. J. S., Municipal Corporations, § 1334, p. 1070; Annotation, 82 A. L. R. 426.

As stated in McQuillin, Municipal Corporations, Revised Volume 5 (2d ed.), § 2199, p. 812: "Unless it has been exempted from assessment by some constitutional or statutory provision, it is well settled that railroad property is subject to special assessments for local improvements, if made so by appropriate legislation in the particular jurisdiction, even in the hands of a lessee, provided, of course, such property is specially benefited by the improvement; nor is such a levy obnoxious to any provisions of the state or federal constitutions. And it seems that it is unnecessary for legislation in express

terms to make such property assessable. Accordingly, under some statutes and municipal charters the tracks and right of way of a railroad company are subject to taxation for local improvements, the same as other lands benefited by the improvement, as lands in the benefit district, or abutting upon the street improvements."

In 2 Elliott on Railroads (3d ed.), § 950, p. 358, it is said: "As said in the preceding section, there is a conflict in the adjudicated cases as to whether or not the right of way of a railroad company is subject to local assessments. The question has been discussed in a great number of instances, and different conclusions reached in apparently similar cases. The latest authorities on the subject, however, recognize what we believe to be the true rule, and that is, that, where the right of way receives a benefit from the improvement for which the assessment is levied, and there is no statute exempting the railroad company from local assessments in clear and unequivocal terms, it is subject to assessment."

In 4 Dillon, Municipal Corporations (5th ed.), § 1451, p. 2586, it is said: "According to the view very generally held, land occupied and used by railroad companies for roadbeds, depots, freight houses, and other corporate purposes, whether the company be owner of the fee or has only an easement or qualified right therein, is to be regarded as real estate, which may be subjected by the legislature to special assessment for the opening, paving, and grading of streets and for other local improvements in the same manner as the real property of private individuals."

Many cases cited in notes appended to the foregoing statements conclusively support them. They are too numerous to cite in this opinion. In that connection, this court cited and approved the last above quoted statement in Chicago & N. W. Ry. Co. v. City of Albion, 109 Neb. 739, 192 N. W. 233, wherein it was concluded that a railroad company's right-of-way and other real property specially benefited by a public improvement was

liable for special assessments in its general relations and apart from its particular use for railroad purposes, in the same manner and upon the same basis as other property owners in a public improvement district. See, also, Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819.

The statutes applicable here have not changed the rule or exempted plaintiff's property in any way, and we conclude that its right-of-way comes within the definition of property, lands, and real estate within the district involved.

We turn then to the question of whether or not there has been such a showing of lack of benefits as to make the assessment void. In that connection, it is well established in this jurisdiction that: "Special assessments for paving by a municipality upon privately owned property for the public benefit in excess of the benefits to the owner of the property so assessed are unauthorized.

"The owner of property in a municipality cannot lawfully be assessed for a public improvement thereon or adjacent thereto beyond the amount of the present benefit or such reasonably prospective benefit as such owner may derive from the improvement in question." However, "When a party attacks a paving assessment as void * * * the burden is on him to prove the invalidity of the assessment." Munsell v. City of Hebron, 117 Neb. 251, 220 N. W. 289. See, also, Whitla v. Connor, 114 Neb. 526, 208 N. W. 670; City of Superior v. Simpson, 114 Neb. 698, 209 N. W. 505; Chicago & N. W. Ry. Co. v. City of Albion, *supra.*

In Whitla v. Connor, *supra,* quoting with approval from Chicago, R. I. & P. Ry. Co. v. City of Centerville, 172 Iowa 444, 153 N. W. 106, it is said: " 'Speaking generally, there is a fair presumption that all real estate receives some degree of benefit from the permanent (or temporary) improvement of a street upon which it abuts. It is upon such presumption that the whole sys-

tem of special assessments for local improvements is justified and sustained. * * *' "

In Medland v. Linton, 60 Neb. 249, 82 N. W. 866, it was held by this court: "In making special assessments for benefits received it is presumed that the authorities arrived at the amounts thereof with reference alone to the benefits accruing to the property assessed, and that the owners are required to contribute to the cost of the improvement only in proportion as their property is specially benefited thereby."

In McQuillin, Municipal Corporations, Revised Volume 5 (2d ed.), § 2195.2, p. 807, citing authorities, it is said: "There is a presumption in favor of the validity of local improvement assessments. For example, there is a presumption of benefit to all property abutting on a street to be improved, although this presumption does not arise as a matter of law; accordingly the burden of proving the contrary is on the landowner." See, also, Johnson v. City of Waterloo, 202 Iowa 617, 210 N. W. 755; Maryland & P. R. R. Co. v. Nice, 185 Md. 429, 45 A. 2d 109.

In the last-cited case, under facts peculiarly distinguishable from those at bar controlling decision, it is said: "It is a general rule that the law presumes that street paving, which facilitates travel and affords better access to abutting property, confers a special benefit upon the abutting property owner as well as a general benefit upon the community. * * * The prevailing view, however, is that the court cannot say as a matter of law that the right of way of a railroad may not be benefited or susceptible of benefit by local improvements, and we accordingly hold that a right of way is subject to assessment for improvements if specially benefited thereby."

As stated in City of Grand Rapids v. Grand Trunk Ry. System, 214 Mich. 1, 182 N. W. 424: "The weight of authority is, and we so hold, that the court may not say as a matter of law, that the track, roadbed, or right of

way of a railroad may not be benefited or susceptible of benefit by a local improvement."

In the light of the foregoing rules, we have examined the record. In that connection, it will be noted that plaintiff's position was and is that its right-of-way received no special benefit, but rather suffered a detriment as a result of the paving.

Five photographs were offered by plaintiff and received in evidence. They reveal that plaintiff's track, with plank-maintained crossing, goes over the paving of Forty-second Street at a slight angle. Plaintiff's right-of-way land on each side of the tracks is level as it abuts the pavement, except on the side where intersecting Hartman Avenue slopes down to the pavement on the east. The pavement on Forty-second Street, sloping from the north, is curbed with grated drainage facilities installed near the track on each side of the pavement. There is a wigwag signal on the right-of-way south of the tracks, and east of the pavement. North of the tracks, on the west side of the pavement, is an ordinary cross buck warning sign. Looking south there are first a few vacant lots, and then residence properties on the east side of the pavement. On the west, there are a few vacant lots, then a store building, and residences farther south. Looking north, there are a few vacant lots, then residences on the west side. Trees obscure a view of the east side. No industrial or other commercial facilities are observable in the photograph.

A blueprint offered by plaintiff illustrates how Forty-second Street intersects plaintiff's right-of-way and Hartman Avenue; outlines the respective properties included in the district, including plaintiff's right-of-way; and shows the amount of assessment levied against each one of them.

Plaintiff's division engineer testified that plaintiff maintained a single track on its right-of-way, known as the main line, used mostly for freight trains, between Elkhorn Junction east of the intersection, and Irvington,

the first station west of Omaha, and South Omaha. He testified that no industry was located near the vicinity of Forty-second Street and Hartman Avenue. Contrary to common knowledge, he also stated that there was no room for any industry of any kind or possibility of construction thereof on either side of its right-of-way spaces, each 45 feet by 300 feet, and as a conclusion, over defendant's objection, he testified that "there is no benefit whatever to the railroad company, the paving does not benefit it in any manner."

On the other hand, plaintiff also called the Omaha city assessment clerk as a witness, who testified at length concerning the manner, reason, and method of assessing and the amount assessed against each property in the improvement district, after which, without objection, he was asked by plaintiff's counsel: "And you figure that the right of way of the railway company was benefited to the extent of the assessment?" To which he answered: "That is right." Thus, as we view it, there was not sufficient competent evidence adduced by plaintiff from which it could have been reasonably concluded that plaintiff received no special benefits from the paving.

On the other hand, a witness then employed by the city in planning, designing, and zoning service, formerly employed by the Railway Educational Bureau and Boeing Aircraft Company, testified for defendant. He testified without objection that plaintiff did receive special benefits from the improvement, present and future, by reason of facilitated access from the highway system to its right-of-way, the strong possibility in the future for location of industrial and commercial facilities along plaintiff's right-of-way, seeking both highway and railroad transportation at or near that point, the availability and accessibility of fire protection, and as an aid to plaintiff in actually maintaining its right-of-way.

As stated in Munsell v. City of Hebron, *supra,* quoting from Chicago, R. I. & P. R. R. Co. v. City of Centerville, *supra:* " 'Benefits capable of instant demonstration and

mathematical accuracy are not necessary in order to support an assessment.'" See, also, Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734.

There is not sufficient competent evidence in this record which would justify the district court or this court in avoiding or annulling the assessment. In the situation presented, the action of the taxing authorities in levying special assessments as provided for by law is conclusive because plaintiff has not proved that such taxing body making such special assessments proceeded upon an illegal principle or an erroneous rule of law. Village of Winside v. Brune, 133 Neb. 80, 274 N. W. 212; Whitla v. Connor, *supra*.

For the reasons heretofore stated, we conclude that plaintiff failed to sustain the burden imposed upon it, and that the judgment of the district court should be and hereby is reversed and the cause remanded, with directions to enter a judgment for defendant in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.