CHICAGO & NORTH WESTERN RAILWAY COMPANY, A
CORPORATION, APPELLANT, V. CITY OF SEWARD,
NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

88 N. W. 2d 175

Filed February 21, 1958. No. 34297.

*Neely, Otis & Neely,* for appellant.

*Paul H. Bek* and *Ivan A. Blevens,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Seward County. It involves a claim for refund by the Chicago & North Western Railway Company from the City of Seward of a part of a special assessment made against it by the city and paid by the railroad, the claim being made by the railroad under and pursuant to the provisions of section 77-1735, R. R. S. 1943. The district court disallowed the claim for refund and dismissed the action. The railroad filed a motion for new trial and filed this appeal from the overruling thereof.

The factual situation out of which this claim had its origin is not in dispute. The railroad, a Wisconsin corporation, operates a line of its railroad through the city of Seward, Nebraska, and owns real property therein. It owns all the real estate in Seward immediately abutting on the west side of Tenth Street for a distance of 1,137 feet between the north property line of South Jackson Street and the north property line of Moffitt Street. In 1953 the city of Seward, a city of the second class, created Improvement District No. 60 under and pursuant to the authority granted it by section 17-511, R. R. S. 1943. The work contemplated by this improvement district included the paving of that part of Tenth Street, which runs north and south, between the north property line of South Jackson Street and the north property line of Moffitt Street or that part of Tenth Street lying just east of the real estate owned by the railroad. After the improvements contemplated by Improvement District No. 60 had been made the city levied an assessment against the real estate of the railroad lying just to the west of Tenth Street, which has hereinbefore been fully described, in the sum of $8,692.35

or at the rate of $7.645 per foot on the 1,137 lineal front feet abutting on the west side of Tenth Street. The railroad paid this amount to the city but asked for a refund of $2,446.40 thereof.

In the area of Tenth Street as it abuts on the railroad's property it is intersected by four streets from the east, each of which is 80 feet wide, being North Jackson, Bradford, Roberts, and Moffitt Streets. These streets, west of Tenth Street, had previously been vacated, thus they create a "T" intersection as they intersect Tenth Street. As to the cost of improving and paving the areas of these four intersections the city charged the east one-half thereof upon all of the taxable property of the city under the authority of section 17-520, R. R. S. 1943, whereas it is the railroad's thought that thereunder the cost of improving and paving the entire area of these four intersections should have been assessed upon all of the taxable property of the city. If that is true then it seems to be the thought of the railroad that its property immediately to the west of these intersections should be free of being taxed for the cost of the improvements made by the city under and pursuant to the authority of Improvement District No. 60, that is, it should not have been assessed on the 320 feet of its property immediately to the west of the four "T" intersections at the rate of $7.645 per lineal front foot or the sum of $2,446.40, which amount it asks that we require the city to refund.

There are two questions involved: First, are the areas created by "T" intersections within those covered by section 17-520, R. R. S. 1943; and second, if they are, does that fact relieve the railroad's property at the top of the "T" intersections from the levy of special assessments resulting from special benefits conferred thereon by the improvement?

The whole act relating to improvement of streets and alleys by cities of the second class by means of improvement districts contemplates the levy of special

assessments for the cost thereof upon the lots and parcels of land in the improvement district which abut on or are adjacent to the streets and alleys improved to the extent that such lots and parcels of land are specially benefited thereby, and in proportion to such benefits, but not to exceed the cost thereof. See, §§ 17-509, 17-510, 17-511, 17-524, R. R. S. 1943. In considering the cost thereof for this purpose the city should, of course, first determine what should not be included. In this respect section 17-520, R. R. S. 1943, provides, in part, as follows: "For all paving and improvements of the intersections and areas formed by the crossing of streets, avenues or alleys, * * * the assessment shall be made upon all of the taxable property of the city or village; * * *. Nothing herein shall be construed as authorizing the mayor and council or board of trustees to pave or gravel any intersections or areas formed by the crossing of streets, avenues or alleys, unless in connection with one or more blocks of street paving or graveling of which the paving or graveling of such intersection or area shall form a part."

"The fundamental principle of statutory construction is to ascertain the intent of the Legislature, and to discover that intent from the language of the act itself, and it is not the court's duty nor within its province to read a meaning into a statute that is not warranted by legislative language." Lang v. Sanitary District, 160 Neb. 754, 71 N. W. 2d 608.

"All statutes relating to the same subject are considered as parts of a homogeneous system and later statutes are considered as supplementary to preceding enactments. So, also, statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together." Enyeart v. City of Lincoln, 136 Neb. 146, 285 N. W. 314.

"All statutes in pari materia must be taken together and construed as if they were one enactment, and, if possible, effect given to every provision." Logan County

v. Carnahan, on rehearing, 66 Neb. 693, 95 N. W. 812.

"Statutes should be so construed as to give effect to the intention of the legislature, and if a statute is plain and unambiguous, there is no room for construction or interpretation." Shellenberger v. Ranson, 41 Neb. 631, 59 N. W. 935, 25 L. R. A. 564.

"The general rule in this state in construing applicable statutes is that the legislative power and authority delegated to a city to construct local improvements and levy assessments for payment thereof is to be strictly construed and every reasonable doubt as to the extent or limitation of such power and authority is resolved against the city and in favor of the taxpayer." Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753. See, also, Chicago & N. W. Ry. Co. v. City of Omaha, 154 Neb. 442, 48 N. W. 2d 409.

"Statutes empowering municipal boards to perform certain functions will be strictly construed, and all doubt will be resolved against the exercise of the power, rather than in favor of it." Garver v. City of Humboldt, 120 Neb. 132, 231 N. W. 699.

It seems only fundamental that what the city did in considering the cost of improving and paving the intersections created by these four streets intersecting but not crossing Tenth Street cannot be approved. Either the entire area was or was not within the language of section 17-520, R. R. S. 1943. There are states wherein division is expressly authorized by statute but such is not the situation in this state.

The city seems to rely on our holding in Price v. City of Lincoln, 103 Neb. 366, 171 N. W. 921, and our citing therein of the case of City of Crowley v. Police Jury of Acadia Parish, 138 La. 488, 70 So. 487, as authority for what it did in dividing the area into two parts for the purpose of applying the provisions of section 17-520, R. R. S. 1943, thereto. The case of Price v. City of Lincoln, *supra,* did not involve the question here presented nor did our citing of the case of City of Crowley

v. Police Jury of Acadia Parish, *supra*, therein in support of the language that "The term 'intersections,' as applied to streets, is defined as 'the space occupied by two streets at the point where they cross each other' " make it authority for the question here presented. The factual situation as to what was and what was not included in an intersection was not involved in Price v. City of Lincoln, *supra,* and what was said therein in that regard was merely dicta.

The city also calls our attention to the history of section 17-520, R. R. S. 1943. In its original enactment it related solely to "The cost of improving the intersections in any such district" and left it optional with the municipal authorities as to whether or not that cost should be paid by the municipality or assessed against the property in the district specially benefited thereby. See Laws 1909, c. 22, § 1, p. 193. The 1919 Legislature changed this to the language of the present statute. Laws 1919, c. 50, § 1, p. 147. The principal change was that which made the cost thereof a mandatory charge to be assessed upon all of the taxable property of the city or village. We do not think, by adding the words "and areas formed by the crossing of streets, avenues or alleys," the Legislature intended to materially limit what had previously been meant by the word "intersections."

We have been unable to find any Nebraska decisions dealing directly with this subject and none have been pointed out to us. The word "intersections" as used in section 17-520, R. R. S. 1943, in our opinion includes all types thereof which would include "T" intersections. We do not think the language added to the act by the 1919 Legislature in any way limited its meaning in this respect. In this respect we think the legislative definition of the term "intersections" as contained in section 39-741, R. R. S. 1943, which deals with "Rules of the Road" is significant. Therein, in subsection (7) thereof, the Legislature said: "(7) The term 'intersection' includes the area embraced within the pro-

longation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other." We think the city should have assessed all of the cost of improving and paving these four "T" intersections upon all of the taxable property of the city.

But would this relieve the railroad of the assessment made against any of its property abutting on Tenth Street? We think not. Special assessments on property in improvement districts are made on the basis of special benefits accruing thereto and not on the basis of the cost of the improvement immediately in front of such property. See, Biggerstaff v. City of Broken Bow, 112 Neb. 4, 198 N. W. 156; Chicago & N. W. Ry. Co. v. City of Albion, 109 Neb. 739, 192 N. W. 233; Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753. As stated in Chicago & N. W. Ry. Co. v. City of Albion, *supra*: "That special assessments can only be based upon special benefits to the property assessed, and that such an assessment beyond the special benefits conferred would be a taking of private property for public use without just compensation, as appellant urges, is settled law in this state." And in Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753, we said: "The court went on to say, quoting from Cain v. City of Omaha, supra (42 Neb. 120, 60 N. W. 368): ' "The only foundation for a local assessment lies in the special benefits conferred upon the property assessed, by the improvement to pay which the assessment is made, and an assessment beyond the benefit so conferred is a taking of property for public use without compensation, and therefore illegal." ' "

Has the railroad shown that its property abutting on and immediately to the west of these four "T" intersections was not specially benefited by the improvement of Tenth Street?

As stated in Chicago & N. W. Ry. Co. v. City of

Omaha, 156 Neb. 705, 57 N. W. 2d 753: "When a party attacks a paving assessment for the reason that it is illegal, or for an unauthorized purpose, the burden is on him to prove the invalidity of the assessment, or that it was for an unauthorized purpose." And in Chicago & N. W. Ry. Co. v. City of Omaha, 154 Neb. 442, 48 N. W. 2d 409, quoting from Munsell v. City of Hebron, 117 Neb. 251, 220 N. W. 289, we said: " 'The owner of property in a municipality cannot lawfully be assessed for a public improvement thereon or adjacent thereto beyond the amount of the present benefit or such reasonably prospective benefit as such owner may derive from the improvement in question.' However, 'When a party attacks a paving assessment as void * * * the burden is on him to prove the invalidity of the assessment.' "

What should have been done by the city in computing the cost of the improvement in order to assess the lots and parcels of land abutting on or adjacent to the street improved was to take the total cost of these four "T" intersections and deduct it therefrom and assess such lots and parcels for the balance to the extent they had been specially benefited thereby but not in excess thereof and assessed all of the taxable property of the city for the costs of improving and paving the four intersections. In this respect the railroad's property was taxable for all special benefits that had accrued thereto by reason of the improving of Tenth Street. See, Chicago & N. W. Ry. Co. v. City of Omaha, 154 Neb. 442, 48 N. W. 2d 409; Chicago & N. W. Ry. Co. v. City of Albion, *supra;* Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753. As stated in Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753: "In Chicago & N. W. Ry. Co. v. City of Albion, 109 Neb. 739, 192 N. W. 233, it was concluded that a railroad company's right-of-way and other real property specially benefited by a public improvement was liable for special assessments in its general rela-

tions and apart from its particular use for railroad purposes, in the same manner and upon the same basis as other property owners in a public improvement district."

Did the railroad show that its property had not been specially benefited? As we said in Chicago & N. W. Ry. Co. v. City of Omaha, 156 Neb. 705, 57 N. W. 2d 753: "When a party attacks a paving assessment for the reason that it is illegal, or for an unauthorized purpose, the burden is on him to prove the invalidity of the assessment, or that it was for an unauthorized purpose." We think the following from Chicago & N. W. Ry. Co. v. City of Omaha, 154 Neb. 442, 48 N. W. 2d 409, has application here. Therein we said: "There is not sufficient competent evidence in this record which would justify the district court or this court in avoiding or annulling the assessment. In the situation presented, the action of the taxing authorities in levying special assessments as provided for by law is conclusive because plaintiff has not proved that such taxing body making such special assessments proceeded upon an illegal principle or an erroneous rule of law."

It is probably true that too large an amount of the costs of the improvements of Improvement District No. 60 were assessed to the owners of lots and parcels of land abutting on or adjacent to the street improved and not enough to all the taxable property of the city but this does not make void any part of the special assessments levied on the railroad's property unless it has shown its property has not been specially benefited in that amount. That it has failed to do. Consequently we affirm the action of the trial court.

AFFIRMED.