**In the Matter of MBA POULTRY, L.L.C., Debtor.**

No. 4:00CV3227.
Bankruptcy No. 00–40122.

United States District Court, D. Nebraska.

April 16, 2001.

T. Randall Wright, Steven C. Turner, Baird, Holm Law Firm, Omaha, NE, for plaintiff.

Stephen M. Cramer, Omaha, NE, for U.S. Small Business Administration.

William L. Biggs, Jr., Biggs, Stoehr Law Firm, Omaha, NE, for debtor.

Patricia Dugan, Omaha, NE, U.S. Trustee.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This is an appeal from an order that was entered by the bankruptcy court on July 20, 2000 (bankruptcy court filing 140, captioned "Memorandum").[1] The appellant is DAPEC, Inc. ("DAPEC"). The appellees include the United States of America on behalf of the Small Business Administration ("SBA"); The Money Store Commercial Mortgage, Inc. ("TMS"); the City of Tecumseh, Nebraska ("City"); and Bird Watchers LLC ("Bird Watchers").[2] Three other appeals involving the same parties are pending before the court as Case Nos. 4:00CV3224, 4:00CV3225, and 4:00CV3226. A fifth appeal, filed by Bird Watchers and involving the relative priority of a lien for personal property taxes levied by Johnson County, Nebraska ("County"), is also pending before the court as Case No. 4:00CV3267. A separate opinion is being issued for each appeal.

### Issue on Appeal

The bankruptcy court order that has been appealed in this case determined that the City's lien for water and sewer charges is superior to all claims other than the County's claim for real estate taxes. Upon review of the record on appeal,[3] I find that the decision of the bankruptcy court should be reversed and the case remanded for further proceedings.

### Statement of Facts

The debtor in bankruptcy, MBA Poultry, L.L.C. ("MBA"), operated a chicken processing plant in Tecumseh, Nebraska. The plant was converted in 1998 with certain equipment that was supplied and installed by DAPEC (exhibit 2/ A). This equipment purchase was subject to a security agreement, dated August 31, 1998, which granted DAPEC a security interest in all goods and fixtures sold by DAPEC

---

1. The Honorable John C. Minahan, Jr., United States Bankruptcy Judge. The bankruptcy court's memorandum opinion is reported as *In re MBA Poultry, L.L.C.*, 251 B.R. 82 (Bankr. D.Neb.2000).

2. The SBA, TMS, and Bird Watchers have not taken a position on the particular issue involved in the instant appeal, however.

3. The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo. *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir.2000).

to MBA, and also in all proceeds from any sale of such collateral (exhibit 2/ B). Financing statements pertaining to DAPEC's security interest were filed in the office of the Nebraska Secretary of State, on or about November 9, 1998 (exhibit 2/ C), and in the office of the Johnson County Clerk, on November 13, 1998 (exhibit 2/ D, E). DAPEC also filed a construction lien in Johnson County on January 22, 1999,[4] claiming that it was owed $721,000 for equipment and services furnished to MBA (exhibit 2/ H). A "notice of commencement" for the plant conversion project was filed for record with the Johnson County Clerk on June 17, 1998 (exhibit 3, ¶ 4). DAPEC claims that its subsequently-filed construction lien[5] attached as of such date, and is entitled to priority over the City's claimed lien for water and sewer services.[6] Alternatively, DAPEC claims that it has a security interest in fixtures which is superior in priority to the any lien that the City possesses.[7]

The City supplied the MBA plant with electrical, sewer and water services. The total indebtedness for utility services provided prior to January 25, 2000, when MBA filed its Chapter 11 petition in bankruptcy, was $235,290.86, itemized as follows: $171,466.23 for electrical service; $31,028.57 for water service; and $32,796.06 for sewer service (exhibit 7/ A). The City acknowledged that the unpaid electric bills were unsecured claims, but asserted in its proof of claim that the unpaid water and sewer bills were subject to statutory liens.

### Discussion

As an initial matter, the City has filed a motion to dismiss DAPEC's appeal as moot (filing 10), contending that all proceeds from the sale of MBA's assets have been disbursed. There is no evidence to support this contention. The court file merely shows that the distribution of sale proceeds was provisionally authorized by the bankruptcy court on July 17, 2000 (bankruptcy court filing 133, captioned "Journal Entry").[8] The bankruptcy court's order required the City's consent to the distribution and also required that sufficient funds be withheld to protect the parties regarding the City's lien claim.

Even assuming that all sale proceeds were, in fact, distributed, this does not mean that the appeal is moot. Basic principles of restitution and appellate procedure dictate that a lower court always has the jurisdiction to order the restitution of an award overturned on appeal, even without a remand from the appellate court.

4. The relative priority of DAPEC's construction lien and previously-recorded construction security interests held by TMS and the SBA is the subject of the appeal in Case No. 4:00CV3224.

5. The bankruptcy court found in its memorandum opinion that "DAPEC does hold a construction lien in the real estate and the proceeds thereof." The City has not cross-appealed from this finding.

6. In this regard, the Nebraska Construction Lien Act provides, with certain exceptions, that "a construction lien has priority over adverse claims against the real estate as if the construction-lien claimant were a purchaser for value without knowledge who had recorded at the time his or her lien attached." Neb.Rev.Stat.Ann. § 52–139(1) (Michie 1995). If recorded while a notice of commencement is effective, a construction lien attaches as of the time the notice was recorded. See Neb.Rev.Stat.Ann. § 52–137(2) (Michie 1995).

7. The bankruptcy court ruled, in an order entered on July 17, 2000 (bankruptcy court filing 132), that DAPEC had no interest in MBA's real estate as a result of its fixture filing. This order is affirmed on appeal in Case No. 4:00CV3225.

8. This bankruptcy court order, which was appealed by DAPEC, is affirmed in Case No. 4:00CV3226.

*See In re Williams,* 256 B.R. 885, 893 (8th Cir. BAP 2001). Thus, if the City has received a distribution of a portion of the sale proceeds, it can be ordered by the bankruptcy court to make restitution if it is determined on appeal that the City's lien did not have priority.[9] It necessarily follows that this court also has jurisdiction on appeal, notwithstanding the fact that DAPEC did not seek a stay of the bankruptcy court's order or post a supersedeas bond. An appeal is moot when a federal court can no longer grant effective relief. *Haden v. Pelofsky,* 212 F.3d 466, 469 (8th Cir.2000). That is not the situation in this case.

The issue of whether the City's lien has priority over DAPEC's claimed construction lien or security interest in fixtures hinges upon whether delinquent water and sewer charges are "special assessments" within the meaning of Neb.Rev.Stat.Ann. § 77–209 (Michie 1995). That statute provides:

> All special assessments, regularly assessed and levied as provided by law, shall be a lien on the real estate on which assessed, and shall take priority over all other encumbrances and liens thereon except the first lien of general taxes under section 77–203.

Because water and sewer charges are the subject of independent statutory provisions, the question of the City's lien priority for each must also be considered separately. I will take up the sewer charges first.

## A. Sewer Charges

■ As a general proposition, sewer use charges are not special assessments. *See Rutherford v. City of Omaha,* 183 Neb. 398, 405, 160 N.W.2d 223, 228 (1968); *Michelson v. City of Grand Island,* 154 Neb. 654, 663–64, 48 N.W.2d 769, 774 (1951). *See also* 64 C.J.S. *Municipal Corporations* § 1538 (1999) ("Such a charge [for the use of, or connection with, a sewer system], or a charge for sewer services, or a rental charge, is, under most authorities, not a tax, or an assessment.") (footnotes omitted). The Nebraska Legislature has provided, however, that delinquent sewer charges may be "certified to the tax assessor and assessed against the premises served, and collected or returned in the same manner as other municipal taxes are certified, assessed, collected and returned." Neb.Rev.Stat.Ann. § 18–503 (Lexis 1999).[10] The City also claims that it has the authority under its own ordinances

---

9. The City has also filed identical motions to dismiss in Case Nos. 4:00CV3224, 4:00CV3225, and 4:00CV3226, even though it has not taken a position on the merits in these other appeals. Each of these cases also involves only a question of lien priority, and the affected parties are all before the court as appellees. Consequently, the City's motion to dismiss in each case will be denied.

10. Section 18–503, which is applicable to all cities and villages in Nebraska, provides in its entirety:
   The governing body of such municipality may make all necessary rules and regulations governing the use, operation, and control thereof. The governing body may establish just and equitable rates or charges to be paid to it for the use of such disposal plant and sewerage system by each person, firm or corporation whose premises are served thereby. If the service charge so established is not paid when due, such sum may be recovered by the municipality in a civil action, or it may be certified to the tax assessor and assessed against the premises served, and collected or returned in the same manner as other municipal taxes are certified, assessed, collected and returned.
   For a city of the second class, such as Tecumseh, the "tax assessor" to whom the certification is to be made would appear to be the county clerk, since this is the official to whom city property taxes are generally certified. *See* Neb.Rev.Stat.Ann. § 17–702 (Lexis Supp.2000).

to certify past-due bills for collection as a special tax.

The bankruptcy court does not appear to have relied directly upon section 18–503 in reaching its determination that the City's lien was "in the nature of a special tax or special assessment" and therefore superior in priority to DAPEC's construction lien. Instead, according to its memorandum opinion, "[t]he key to understanding the issue before the Court lies in the recognition that local ordinances, rather than state statutes, govern the enforcement of the liens created under the water and sewer statutes." The statutory lien provision for sewer charges that the court references is Neb.Rev.Stat.Ann. § 17–925.01 (Lexis Supp.2000), which provides:

The mayor and council of any city of the second class or the board of trustees of any village is hereby authorized, after the establishment of a system of sewerage and at the time of levying other taxes for city or village purposes, to levy a tax of not more than three and five-tenths cents on each one hundred dollars upon the taxable value of all the taxable property in such city or village for the purpose of creating a fund to be used for the maintenance and repairing of any sewer or water utilities in such city or village. *In lieu of the levy of such tax, the mayor and city council of any such city or the board of trustees of any village may establish by ordinance such rates for such sewer service as may be deemed by them to be fair and reasonable, to be collected from either the owner or the person, firm, or corporation requesting the services at such times, either monthly, quarterly, or otherwise, as may be specified in the ordinance. All sewer charges shall be a lien upon the premises or real estate for which the same is used or supplied. Such lien shall be enforced in such manner as the local governing body provides by ordinance.* The charges thus made when collected shall be placed either in a separate fund or in a combined water and sewer fund and used exclusively for the purpose of maintenance and repairs of the sewer system, or the water and sewer system, in such city or village.

(Emphasis supplied.)

The City by ordinance has provided that arrearages for water service may be certified to the county clerk "to be collected as a special tax in the manner provided by law,"[11] and has also provided that the same procedure shall apply to delinquent sewer accounts.[12] The bankruptcy court

---

**11.** Section 3–121 of the Tecumseh City Code provides:

§ 3–121 *MUNICIPAL WATER DEPARTMENT; LIEN.* In addition to all other remedies, if a customer shall for any reason remain indebted to the Municipality for water service furnished, such amount due, together with any rents and charges in arrears, shall be considered a delinquent water rent which is hereby declared to be a lien upon the real estate for which the same was used. The Municipal Clerk shall notify in writing or cause to be notified in writing, all owners of premises or their agents whenever their tenants or lessees are sixty (60) days or more delinquent in the payment of water rent. It shall be the duty of the Public Works Commissioner on the first (1st) day of June of each year to report to the Governing Body a list of all unpaid accounts due for water together with a description of the premises upon which the same was used. The report shall be examined, and if approved by the Governing Body, shall be certified by the Municipal Clerk to the County Clerk to be collected as a special tax in the manner provided by law.

(Exhibit 7, ¶ 3 attachment)

**12.** Section 3–211 of the Tecumseh City Code provides:

§ 3–211 *MUNICIPAL SEWER DEPARTMENT; COLLECTION OF SEWER USE*

determined that the City's ordinances were authorized by section 17–925.01 and were applicable for purposes of determining the issue of lien priority under section 77–209. I disagree with this determination, for two reasons: First, there is no evidence that the City established any rates or charges for sewer service pursuant to section 17–925.01. Second, there is no statutory authority for the City to levy special taxes or assessments for the collection of such charges.

While the parties have not briefed this issue, I note that the City's ordinances describe the sewer charges as "rental fees" and specifically reference, as statutory authority for such fees, Neb.Rev.Stat.Ann. § 17–925.02 (Michie 1995). Thus, section 3–211 of the Tecumseh City Code provides:

> § 3–211 MUNICIPAL SEWER DEPARTMENT; CLASSIFICATION. The Governing Body may classify for the purpose of rental fees the customers of the Municipal Sewer Department; Provided, that such classifications are reasonable and do not discriminate unlawfully against any consumer or group of consumers. The classification must be approved by the Environmental Protection Agency, relative to the user charge grant condition. (Ref. 17–925.02 RS Neb.)

Section 17–925.02 of the Nebraska statutes provides:

> Any city of the second class or village in the State of Nebraska may make rental charges for the use of an established municipal sewerage system on a fair and impartial basis for services rendered. They shall be collected at the same time and in the same manner as the water charges by the same officials.

The difference between sections 17–925.01 and 17–925.02 is that the former provision applies to charges for sewer maintenance and repair, whereas the latter provision applies to charges for services rendered.[13] The maintenance and repair charges under section 17–925.01 are imposed in lieu of a property tax and are accorded lien status. The rental charges under section 17–925.02, on the other hand, are not designated as liens.

Because revenue received from the separate charges that may be imposed by a city of the second class under sections 17–925.01 and 17–925.02 are statutorily earmarked for different purposes, it is reasonable to expect that the City, in addition to establishing rental fees for bond payments under 17–925.02, has either levied a tax or established charges for the purpose of funding maintenance and repairs under section 17–925.01. The record, however, is silent on this point.

Even if it is assumed that a portion of the unpaid sewer bills are for charges established pursuant to section 17–925.01, and therefore a secured claim, there is no provision in this statute which authorizes the City to designate delinquent accounts for payment as a "special tax" or "special assessment." The statute merely

---

FEES. Sewer rental bills shall be due and payable at the same time and in the same manner as water bills are due and payable. All penalties and procedures concerning delinquent accounts with the Municipal Water Department shall also be applicable to delinquent accounts with the Municipal Sewer Department.
(Exhibit 7, ¶ 3 attachment)

13. "The revenue from such [rental] charges shall only be used for the abatement or the reduction of ad valorem taxes being levied or to be levied for the payment of bonds outstanding or to be issued for the construction of or additions to such sewerage system." Neb.Rev.Stat.Ann. § 17–925.03 (Michie 1995).

provides that the lien "shall be enforced in such manner as the local governing body provides by ordinance." Under Nebraska law, municipal corporations have no inherent power to levy special taxes or assessments, and can do so only when authorized by the Legislature. *See Chicago & N.W. Ry. Co. v. City of Omaha*, 154 Neb. 442, 447, 48 N.W.2d 409, 412 (1951); *Besack v. City of Beatrice*, 154 Neb. 142, 146, 47 N.W.2d 356, 359 (1951); *Falldorf v. City of Grand Island*, 138 Neb. 212, 292 N.W. 598, 603 (1940). Furthermore, any such statutory authorization is to be strictly construed against the municipality. *See Foote Clinic, Inc. v. City of Hastings*, 254 Neb. 792, 796, 580 N.W.2d 81, 84 (1998), and additional cases cited therein. Only a very liberal reading of section 17–925.01 would support the conclusion that the City had the power to levy a special tax or assessment against MBA's real property as a means of enforcing its purported statutory lien.

Although not cited by the City in support of its lien claim, another statute which may be applicable is Neb.Rev.Stat.Ann. § 18–509(1) (Michie 1995). This statute, which applies to all cities and villages, generally provides:

> The mayor and city council of any city or the board of trustees of any village, in addition to other sources of revenue available to the city or village, may by ordinance set up a rental or use charge, to be collected from users of any system of sewerage, and provide methods for collection thereof. The charges shall be charged to each property served by the sewerage system, shall be a lien upon the property served, and may be collected either from the owner or the person, firm, or corporation requesting the service.

Again, however, even if this statute does apply to the City's sewer rental charges in this case, it does not specifically authorize the City to levy any special taxes or assessments, either as a method for collecting the charges or for enforcing the statutory lien.

For the reasons stated above, I find that the bankruptcy court erred in concluding that the City's ordinances provide a legal basis for the imposition of a special tax or assessment. Only special assessments that are "regularly assessed and levied as provided by law" are entitled to priority as liens under section 77–209.

There remains for consideration, though, the possibility that section 18–503's certification procedure for unpaid sewer charges may be applicable to the facts of this case. Although DAPEC argues that "there is no evidence that the City of Tecumseh 'certified' anything to the County for purposes of any special assessment," (appellant's reply brief, p. 19), the bankruptcy court found, among other undisputed facts, that "[t]he City certified to the Johnson County Clerk on January 19, 2000,[14] that MBA Poultry's delinquent water and sewer bills totaled $53,073.89 at that time." (Filing 140, p. 2) This finding of fact by the bankruptcy court is not clearly erroneous.

The evidence includes a title search, dated January 25, 2000, which shows a "Certification of Past Due Utility Bills, dated and filed January 19, 2000, in book 42 at page 388 of the Miscellaneous Records of Johnson County, Nebraska, executed by City of Tecumseh, Nebraska, against MBA Poultry, LLC, for sewer, in the amount of $27,437.83, and for water, in the amount of

---

14. This filing date precedes by six days MBA's filing for bankruptcy and by three days DA-PEC's recordation of its construction lien.

$25,636.06." (Exhibit 6/C) A copy of that filing was not received into evidence at the hearing that was held by the bankruptcy court on July 7, 2000, but was subsequently provided to the bankruptcy court as an attached exhibit to a letter brief dated July 10, 2000.[15]

The City's letter brief was submitted at the direction of the bankruptcy court (filing 4, supplemental record on appeal, Transcript ("Tr."), p. 66:12–16), and was accompanied by a request to submit an authenticating affidavit if necessary. In this regard, it is also noted that the bankruptcy court at the July 7th hearing granted the City leave to supplement the record (Tr., pp. 8:13–9:3). The record does not reflect that DAPEC made any objection to the bankruptcy court's consideration of the exhibit. Consequently, for purposes of this appeal, the exhibit will be treated as having been properly received into evidence.

There may be some question as to whether the City intended this certification to be made pursuant to section 18–503, or whether it was acting only with reference to its own ordinances, as described above. The City's attorney, when questioned by the bankruptcy court if there was any statutory provision for the certification that was filed, replied that it "was just something they were doing as a kind of cover-their-tail action in that regard." (Tr. 66:1–5) Regardless of the City's actual intention, however, the important factor is whether the filing satisfies the requirements of section 18–503. I find that it does, and will presume that the City acted pursuant to, and in accordance with, section 18–503 in filing the certification.[16] Unfortunately for the City, the filing of a valid certification under section 18–503 does not materially advance its legal position regarding lien priority.

If this were a matter of first impression, it might reasonably be concluded that delinquent sewer charges, at least after they have been certified to the tax assessor, are to be treated as special assessments or special taxes under Nebraska law. This conclusion is directly supported by the statutory language that the certified charges are to be assessed and collected in the same manner as *other* municipal taxes." (Emphasis supplied.) *See, e.g., Twin Lakes Resorts, Inc., v. Thousand Adventures of Ohio, Inc.,* 1997 WL 791523 at *3 (Ohio App. 3 Dist., Dec. 18, 1997) (No. 2–97–16) (relying, in part, on comparable language in Ohio statute to conclude that lien for overdue municipal sewer charges was entitled to priority over other liens).

In *Rutherford v. City of Omaha, supra,* however, the Nebraska Supreme Court construed section 18–503 merely "to authorize liens for payment of amounts overdue." At issue in that case was the validity of ordinances passed by the City of Omaha which periodically levied "special assessments" against properties receiving sewer service for which payments were delinquent. As a city of the metropolitan class, Omaha had the ability not only to

---

15. The certification, which is signed by the City Clerk, requests the Johnson County Clerk to assess the stated amount of delinquent sewer and water bills against MBA's real estate and "to collect them in the same manner as other municipal taxes are certified, assessed, collected and returned." There is no evidence that the City ever certified to the county clerk for collection the additional $5,358.23 in past-due sewer charges that were included in the proof of claim the City filed with the bankruptcy court on April 11, 2000.

16. In the absence of evidence to the contrary, there is a presumption under Nebraska law that official acts, including ministerial acts, have been properly performed. *See Sherard v. State,* 244 Neb. 743, 748, 509 N.W.2d 194, 198 (1993).

certify past-due amounts for collection "in the same manner as other municipal taxes," as provided in section 18–503, but also to have the certified amounts assessed and collected "in the same manner as special taxes or assessments." The latter provision is contained in Neb.Rev.Stat.Ann. § 14–365.03 (Michie 1995), which reads:

The governing body of such municipality may make all necessary rules and regulations governing the use, operation, and control thereof. The governing body may establish just and equitable rates or charges to be paid to it for the use of such disposal plant and sewerage system by the owner of the property served or by the person, firm, or corporation using the services. If any service charge so established is not paid when due, such sum may be recovered by the municipality in a civil action, or it may be certified to the tax assessor and assessed against the premises served, and collected or returned in the same manner as other municipal taxes are certified, assessed, collected, and returned, or it may be assessed against the premises served in the same manner as special taxes or assessments are assessed by such city and shall be certified, enforced, collected, and returned as other special taxes or assessments of such city.

In holding that the ordinances were valid and enforceable under both statutory provisions, the Nebraska Supreme Court ruled that the city's characterization of the certified amounts as "special assessments" was unimportant. It stated:

Sewer use charges are not special assessments. We construe the statutes to authorize liens for payment of amounts overdue. It is unimportant for present purposes that the city described the unpaid charges as "special taxes" and "special assessments." Legislative intent controls the construction of a phrase in an ordinance, although the phrase is inappropriate.

*Rutherford*, 183 Neb. at 405, 160 N.W.2d at 228 (citations omitted). The Nebraska Supreme Court held, in other words, that while delinquent sewer use charges may be collected using the same procedure as for special taxes and assessments, they retain their essential character as use charges. Other courts have also reached this result. *See, e.g., Mississippi Valley Sav. & Loan Ass'n v. L.A.D., Inc.,* 316 N.W.2d 673, 675 (Iowa 1982) (statutory provision that city may collect sewer charges "in the same manner" as taxes refers to procedure rather than substance, and means simply the method by which collection is to be accomplished).

Because the issue on appeal in the present case is one of state law, I am bound by the Nebraska Supreme Court's decision. *See David v. Tanksley,* 218 F.3d 928, 930 (8th Cir.2000). The *Rutherford* decision clearly establishes that a municipal sewer charge is not transformed into a "special assessment" by certification under section 18–503. Consequently, the City's lien for the unpaid sewer charges under section 18–503 [17] is not entitled to priority under section 77–209.

---

**17.** As indicated by the Nebraska Supreme Court in *Rutherford,* certification of delinquent sewer charges under section 18–503 gives rise to a lien which might otherwise not exist. The operation of section 18–503 was also described by the Court in *Michelson v. City of Grand Island, supra,* wherein it stated: "The purpose of the last sentence of [section 18–503] is to make plain that in addition to adoption by ordinance of rules and regulations for the collection of the sewerage charges the city may sue the plaintiff for the bill or certify it to become a lien against the property." 154 Neb. at 668, 48 N.W.2d at 776.

## B. Water Charges

█ Unlike sewer charges, there is no statutory procedure for certification and assessment of delinquent water bills.[18] The City has endeavored to create such a procedure by ordinance,[19] but, again, I find no statutory authority for transforming unpaid rental charges into special assessments. Neb.Rev.Stat.Ann. § 17-538 (Michie 1995), which grants cities of the second class the power to establish and collect water taxes, rents or rates, and which establishes a statutory lien that is to be enforced in the manner provided by city ordinance,[20] cannot be strictly construed to authorize the levying of special assessments for the collection of delinquent water rents. The City's contention that the statute "provides for assessing or taxing for water charges due," (appellee's brief, p. 3), is simply incorrect.

While section 17-538 does authorize the assessment of "water taxes," there is no evidence that the City in this case exercised this taxing power. Section 3-120 of the Tecumseh City Code instead provides for the establishment of metered rates, also referred to as "water rents" in section 3-121 of the City Code. The charging of water rents or water rates is decidedly different from the imposition of a tax. As

---

**18.** Only cities of the primary class have such statutory authority, as provided in Neb.Rev. Stat.Ann. § 16-682 (Michie 1995). Interestingly, this statute sets forth a specific procedure for the city council, by resolution, to make "special assessments" against real estate for delinquent water rentals. Section 16-682 reads:

Such cities [of the primary class] shall have the right and power to tax, assess, and collect from the inhabitants thereof such rent or rents for the use and benefit of water, gas, power, light or heat used or supplied to them by such waterworks, mains, pump, or extension of any system of waterworks, or water supply, or by such gas, light or heat system, as the council shall by ordinance deem just or expedient. With respect to water rates, taxes or rents only, such water rates, taxes or rents, when delinquent, shall be a lien upon the premises or real estate upon or for which the same is used or supplied; and such water taxes, rents or rates shall be paid and collected and such lien enforced in such manner as the council or commission, as the case may be, shall by ordinance direct and provide. Any delinquent water rentals which remain unpaid for a period of three months after they become due may be, by resolution of the said council or commission, assessed against said real estate as a special assessment, which said special assessment shall be certified by the city clerk to the county clerk of the county in which said city is situated. Said county clerk shall thereupon place same on the tax rolls for collection, subject to the same penalties and to be collected in like manner as other

city taxes; PROVIDED, that the local governing body of said city shall notify in writing nonoccupying owners of premises or their agents whenever their tenants or lessees are sixty days delinquent in the payment of water rent. Thereafter if the owner of said real estate or his agent within such city shall notify the council or commission in writing to discontinue water service to said real estate or the occupants thereof, it shall be the duty of the officer in charge of the water department promptly to discontinue said service; and rentals for any water furnished to the occupants of said real estate in violation of said notice shall not be a lien thereon.

**19.** See § 3-120 of the Tecumseh City Code, as previously set forth.

**20.** Section 17-538 reads in its entirety:

Such cities [of the second class] and villages shall have the right and power to tax, assess, and collect from the inhabitants thereof such tax, rent or rates for the use and benefit of water used or supplied to them by such waterworks, mains, portion or extension of any system of waterworks or water supply as the council or board of trustees shall deem just or expedient; and all such water rates, taxes or rent shall be a lien upon the premises, or real estate, upon which the same is used or supplied; and such taxes, rents or rates shall be paid and collected and such lien enforced in such manner as the council or board of trustees shall by ordinance direct and provide.

explained in 94 C.J.S. *Waters* § 284 (1956) (footnotes omitted):

> Water rents or water rates fixed by municipal ordinance for service from a water system owned and operated by a municipal corporation, while they have been referred to as taxes, are ordinarily not taxes, but simply the price charged for the service or for the water as a commodity; nor are they assessments, or substitutes for taxes. The transaction is merely a voluntary sale and purchase of such quantity of water or such service as the consumer chooses to buy, and his duty or obligation to pay the charges therefore rest not on the taxing power but rather on contract; and contractual relation does not give the municipality the authority or power to collect water charges as delinquent taxes.

 The City, when providing water service to the chicken processing plant, was acting in a proprietary capacity, and, consequently, was bound by the same rules of law as a private corporation. *See Harms v. City of Beatrice*, 142 Neb. 219, 223, 5 N.W.2d 287, 289 (1942); *Burger v. City of Beatrice*, 181 Neb. 213, 218, 147 N.W.2d 784, 788 (1967); *Crosswhite v. City of Lincoln*, 185 Neb. 331, 334, 175 N.W.2d 908, 911 (1970). Thus, like any other supplier, the City is bound by the recorded notice of commencement for the plant conversion project and by DAPEC's fixture filing, to the extent such filings are effective.

## Conclusion

The bankruptcy court erred in finding that the City's charges for water and sewer service were in the nature of special taxes or assessments, and therefore entitled to priority as liens under section 77–209. The case will be remanded to the bankruptcy court to redetermine the question of lien priority and to fashion any appropriate relief, such as ordering restitution.

Accordingly,

IT IS ORDERED that:

1) the motion to dismiss appeal filed by the appellee City of Tecumseh, Nebraska (filing 10) is denied; and

2) the bankruptcy court's order entered on July 20, 2000 (bankruptcy court filing 140, captioned "Memorandum") is reversed and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.